376 So.2d 1225 (1979)
Henry James GADDY, Jr., Appellant,
v.
L. Keith TURNER and the Honorable Robert L. Shevin, Attorney General, State of Florida, Appellees.
No. 79-595.
District Court of Appeal of Florida, Second District.
November 21, 1979.
*1226 Richard G. Smith, Clearwater, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellees.
SCHEB, Judge.
Does the Interstate Agreement on Detainers Act, Section 941.45, Florida Statutes (1977), apply to a detainer filed against a prisoner based on a charge that he violated the conditions of his probation? The trial court held the Detainers Act does not apply under these circumstances. We disagree and reverse.
Henry James Gaddy, Jr., was placed on probation after pleading guilty to grand larceny in the Circuit Court in Pinellas County, Florida in August 1977. Subsequently, he pled guilty to charges of murder and burglary in Georgia, and was sentenced to life imprisonment on the murder count and to four twenty-year concurrent terms on the burglary counts.
In February 1978 Gaddy's Florida probation officer filed an affidavit charging Gaddy with probation violation for failing to report as required, and for changing his residence without permission. In May 1978 the Sheriff of Pinellas County filed a detainer based upon the probation officer's affidavit with Georgia authorities.
On May 25, 1978, Gaddy requested the Pinellas County Circuit Court to make a final disposition of the probation violation charge pursuant to the Interstate Agreement on Detainers Act. § 941.45, Fla. Stat. (1977). Gaddy contended that the Florida detainer had caused Georgia prison authorities to hold him in closer security than other prisoners, and had made him ineligible to be moved to a prison facility closer to his family.
The Detainers Act requires that when a state files a detainer, it must, upon request of the prisoner, provide a hearing on the charge that forms the basis of the detainer within 180 days. Id. § 941.45(3)(a).[1] When no hearing was provided within 180 days, Gaddy moved to dismiss the probation violation charge pursuant to the Detainers Act. The Act provides that if a hearing is not provided within 180 days, "such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." Id. § 941.45(3)(d). The trial court denied Gaddy's motion on the basis that the word "complaint" in the Act does not include affidavits charging probation violations.
Our research has revealed no persuasive decisional law on this point.[2] Thus, we must determine whether the Florida Legislature intended the Detainers Act to apply *1227 to an affidavit which charges a probation violation. A detainer is filed by a prosecuting officer to assure that, when the prisoner's term is completed, he will be released to the officer's custody. A detainer filed by state authorities against a prisoner incarcerated in another state frequently causes the authorities in that state to impose greater restrictions on the prisoner subject to the detainer than are imposed on the general prison population:
During the term of imprisonment, . . the pending detainer has an adverse effect upon the treatment which the convict receives, despite the fact that the detainer is based upon an untried accusation of which he may ultimately be found innocent. That the untried charges on which many detainers are based are charges of little substance is suggested by the fact that less than half of those incarcerated to whom such detainers attach are ever brought to trial, many of these charges being withdrawn when the convict's term of imprisonment is completed.
Most parole boards consider a detainer as an adverse factor, and some will automatically deny parole if a detainer is pending. A detainer generally affects the convict's work assignments, barring him from trustee status, from working outside the prison walls, or even from participating in a prison industrial organization. If the convict is young, the existence of a detainer may prevent him from being placed in a prison for youthful offenders. In addition, the uncertainty engendered by such an unresolved charge will usually cause the convict to take a negative attitude toward any rehabilitation program which the correction officials undertake.
Note, Convicts  The Right to a Speedy Trial and the New Detainer Statutes, 18 Rutgers L.Rev. 828, 835-36 (1974) (footnotes omitted).
In response to the adverse consequences which historically have followed the filing of a detainer, the Council of State Governments proposed a uniform detainers act. The Council's proposal was revised by the National Conference of Commissioners on Uniform State Laws and promulgated as the Uniform Mandatory Disposition of Detainers Act. 11 Uniform Laws Annotated 321 (1974); Note, supra, at 831. The Uniform Act was designed:
not to protect the convict's right to a speedy trial per se, but rather to protect him from the particular disabilities engendered by an untried detainer pending against him while he is serving a prison term. Often the effect of such detainer, which could be based upon an unsubstantiated charge, is to aggravate the punishment received for the original offense.
Id. at 832. Thus, it follows that the intent of the drafters of the Uniform Act must have been to prevent detainers based on untried charges from obstructing programs of prisoner treatment and rehabilitation, irrespective of the nature of the untried charges.
Further, the Council of State Governments defined a detainer as a:
warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer. Such detainers may be placed by various authorities under varying conditions, such as when .. . a parolee commits a new crime and is imprisoned in another state... .
Id. at 835 n. 58. Consequently, the Uniform Act appears to apply to detainers based on untried charges of parole and probation violations.
The stated purpose of the Florida Detainers Act is to speedily dispose of "charges outstanding against a prisoner, [because] detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." § 941.45(1), Fla. Stat. (1977). The Florida Legislature enacted the Interstate Agreement on Detainers Act with provisions virtually identical to those of the Uniform Mandatory Disposition of Detainers Act. Thus, we must conclude that the Legislature's *1228 purpose was the same as the drafters of the Uniform Act, that is, to prevent detainers based on untried charges from obstructing programs of prisoner treatment and rehabilitation, irrespective of the nature of the untried charges.[3]
The logic of our conclusion is supported by the likelihood, as Gaddy contends, that incarcerating states may treat detainers based on untried charges of probation violation in the same manner as detainers based on untried charges of criminal offenses and impose the same restrictions irrespective of the underlying charge. Consequently, it follows that detainers based on probation violations should fall within the mandates of the Act. Although in this case the detainer was based on the charges of failing to report to the probation officer and leaving the county without the officer's permission, probation violations frequently are based on felony charges. Further, a person violating probation is subject to extradition. § 941.23, Fla. Stat. (1977). Since the Legislature considered a probation violation as an act serious enough to warrant extradition, it likely intended that it be covered by the Detainer Act in the same manner as extradictable criminal offenses. Finally, it is paradoxical for the State to attempt to utilize a detainer to insure Gaddy's presence following completion of his Georgia sentence, but to contend that it need not comply with procedural requirements imposed by the Detainers Act.
Consequently, we hold that the Interstate Agreement on Detainers Act which requires a hearing within 180 days of request applies to detainers based on charges of probation violation. Accordingly, because the state failed to provide Gaddy a hearing within 180 days of his request, we dismiss with prejudice the instant charges that Gaddy violated his probation.
BOARDMAN, Acting C.J., and DANAHY, J., concur.
NOTES
[1] Section 941.45(3)(a) provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction ... his request for a final disposition to be made of the indictment, information, or complaint... .
[2] But see Sable v. Ohio, 439 F. Supp. 905 (W.D. Okl. 1977), in which the district court concluded that the federal Interstate Agreement on Detainers Act, Pub.L.No. 91-538, § 1, 84 Stat. 1397 (1970), does not apply to detainers based on charges of parole violation. Unfortunately, the opinion in Sable contains no reasoning with regard to this point.
[3] The intent of the United States Congress in enacting the federal Interstate Agreement on Detainers Act, which is substantially identical to the Florida Detainers Act, was consistent with the intent of the drafters of the Uniform Act. Pub.L.No. 91-538, § 1, 84 Stat. 1397 (1970); see S.Rep.No. 91-1356, 91st Cong. 2d Sess. 1, 3, reprinted in [1970] U.S.Code Cong. & Admin.News, pp. 4864, 4866; see also, H.R. Rep.No. 91-1018, 91st Congress, 2d Sess. 2 (1970).