# HAROLD LEE CLIPPER v. STATE OF MARYLAND

[No. 145, September Term, 1981.]

*Decided February 4, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Gary S. Offutt, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

The primary question we shall decide in this case is whether a notification served on the head of an institution in which a prisoner is serving a sentence, advising that the prisoner is wanted in another jurisdiction to face an allegation that he has violated his probation falls within the purview of the Interstate Agreement on Detainers.

Because of the legal nature of this issue, the facts can be recounted succinctly. Harold Lee Clipper was tried by a jury in the Circuit Court for Montgomery County and found guilty of resisting arrest. The trial court suspended the imposition of sentence and placed Clipper on supervised probation for two years, dating from March 9, 1978. The State petitioned to revoke this probation in May, 1979 alleging that Clipper had been subsequently arrested and had apparently absconded from probation supervision. A bench warrant was issued in October, 1979. In February, 1980, Clipper was incarcerated at Lorton Reformatory in Virginia pursuant to an attempted robbery conviction received in the District of Columbia. In April, 1980, he was notified that this charge had been placed against him in Montgomery County and that a detainer had been filed. In May, 1980, Clipper requested final disposition of the charge pursuant to the Interstate Agreement on Detainers.

On March 31, 1981, Clipper was released from Lorton and returned to Montgomery County. He moved to dismiss the petition to revoke probation; his motion was denied. Thereupon, the trial court held a hearing, determined that

Clipper had violated the conditions of probation, and sentenced him to one year's imprisonment. Clipper appealed to the Court of Special Appeals and this Court, on its own motion, granted certiorari prior to consideration by the intermediate court.

Clipper contends that the Interstate Agreement on Detainers applies to proceedings for violation of probation and that because he was not tried on this charge within 180 days of his request for final disposition thereof, the petition must be dismissed. He maintains, in the alternative, that if the detainer agreement does not apply, the State unreasonably delayed a hearing on the petition and, therefore, it still should be dismissed. Finally, he asserts that being placed on probation constituted a sentence; therefore, the sentence of one year's imprisonment was an unconstitutional increase of punishment violating the Double Jeopardy Clause.

The Interstate Agreement on Detainers (IAD) is a compact among forty-eight states, the United States and the District of Columbia.[1] The IAD was spawned by the extensive criticism in the literature of penology and corrections regarding the serious disadvantages the detainer system placed on prisoners. *See* S. Rep. No. 1356, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 4864, 4866; Note, *Interstate Agreement on Detainers; Defining the Federal Role,* 31 Vand. L. Rev. 1017, 1019, (1978). Maryland enacted the IAD and joined the signatory states in 1965. 1965 Md. Laws ch. 627, § 1. Those portions of the statute pertinent to this appeal have remained unchanged since the initial adoption of the IAD by the Maryland Legislature and are contained in the Md. Code (1957, 1982 Repl. Vol.), Art. 27, §§ 616A-616R.

The Agreement prescribes the methods and procedures by which one jurisdiction may obtain temporary custody of an inmate imprisoned in another jurisdiction for purposes of trial on detainers based on *untried indictments, informa-*

---

1. Louisiana and Mississippi have not adopted the agreement.

*tions* or *complaints* pending in the requesting jurisdiction.[2]

The Agreement provides that a prisoner may initiate proceedings in the requesting jurisdiction by causing written notice to be served on the prosecuting officer of the appropriate jurisdiction of his request for a final disposition of any such untried indictment, information, or complaint. The prisoner sends his written notice to the official having custody of him and that official is required to forward such notice to the appropriate prosecuting officer. The Agreement requires that the prisoner be tried on the charges contained in the detainer within 180 days.[3] If the appropriate authority refuses or fails to accept temporary custody of the prisoner or fails to try him within the 180 days prescribed, then the court having jurisdiction over the charges in the detainer shall dismiss the same with prejudice.[4]

---

**2.** Article I of the Agreement, codified as § 616B of Article 27 provides:

The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

**3.** Section 616D (Article III of the Agreement) provides, in pertinent part:

(a) *Notice of imprisonment and request for disposition; time of trial; continuance; certificate of official having custody.* — Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . .

**4.** Section 616F(c) (Article V of the Agreement) provides:

(c) *Dismissal of indictment, etc.* — If the appropriate authority shall refuse or fail to accept temporary custody of said person, or

The two basic goals sought to be achieved by the IAD are: (1) to encourage the expeditious disposition of charges; and (2) to provide cooperative procedures among member jurisdictions to facilitate such disposition. The underlying reasons for encouraging expeditious disposition of untried charges and avoiding delays thereon were noted by the Senate Judiciary Committee:

> [A] prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing. [S. Rep. No. 1356 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 4864, 4866.]

However, it is clear that for the Agreement to become activated, there must be an untried indictment, information or complaint lodged against the prisoner evidenced by a detainer. Clipper contends that the detainer lodged against him for violation of probation is an untried complaint. We disagree.

The Agreement's specific reference to an *untried* complaint certainly suggests that the drafters anticipated that the prisoner would be exposed to an actual trial. Our prior decisions have indicated that a probation revocation hearing

---

in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

is not a trial; "the probationer is not invested with all the rights constitutionally accruing to a defendant in a criminal prosecution, and the hearing, although judicial, is not subject to all of the limitations imposed by law upon a trial leading to conviction." *State v. Bryan,* 284 Md. 152, 159 n.6, 395 A.2d 475 (1978); *see also Edwardsen v. State,* 220 Md. 82, 88, 151 A.2d 132 (1959) (proceeding for revocation of probation is informal in character and not subject to limitations imposed by law upon the trial leading to a conviction).[5] Because trial and probation revocation hearings differ in such fundamental respects, it seems implausible that by the terms "untried indictment, information or complaint" the drafters intended to include charges for which the prisoner would not have to stand trial. The drafters' use of the apparently general term "complaint" is readily understood upon realizing the universal nature of the IAD. As the Tennessee court noted in *Blackwell v. State,* 546 S.W.2d 828, 829 (Tenn. Crim. App. 1976), "some jurisdictions use the term 'complaint' in lieu of the terms 'indictment' or 'information.' " Therefore, even though the technical meaning of the term complaint might give rise to some uncertainty, its meaning becomes clear when read in context. It simply is a general term intended to refer to a charge that will require the prisoner to go to trial.

Furthermore, a closer examination of the evils the IAD was intended to address indicates that the most fundamental problem with detainers is not present in the

---

5. *Cf.* Morrissey v. Brewer, 408 U.S. 471, 480, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) where the Supreme Court stated:

> We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.

* * *

> It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

probation revocation setting. As noted in the congressional report, the first disadvantage to a prisoner facing an untried complaint is that because he is in custody, he cannot seek witnesses or preserve his defense. In analyzing this issue, other jurisdictions have pointed to the problems inherent in this situation as the primary reasons for the IAD. For instance, in *Suggs v. Hopper,* 234 Ga. 242, 215 S.E.2d 246, 247 (1975), the Georgia court noted that "[t]he purpose of the statute [IAD] is to insure speedy trial on pending charges before staleness and difficulty of proof set in." This purpose would not be served by applying the IAD to the probation revocation situation, which does not involve a complex trial with its attendant dangers if delayed. The probation revocation hearing usually involves a rather limited inquiry by the trial judge, exercising his sound discretion, focusing on whether the defendant has been convicted for another offense or whether he has failed to comply with a specific condition of probation. The problems of proof, staleness of evidence, and loss of memory caused by time are factors encountered in a trial that may affect due process in criminal prosecutions, but they are not significant concerns in a probation revocation hearing. Although some of the adverse consequences experienced by the prisoner while incarcerated subject to a detainer may be similar, a situation over which this Court has no control, the prisoner's ability to receive a fair hearing by the courts in this State is largely unaffected by delaying his hearing until he is released from a foreign jurisdiction. For these reasons, we hold that a detainer based on a violation of probation is not an untried indictment, information, or complaint and is not within the speedy trial provisions of the Interstate Agreement on Detainers.

An examination of cases from other jurisdictions that have adopted the IAD indicates that this is the almost unanimous result in similar cases. This, of course, has implications beyond this particular case, because it is desirable that the party states be consistent in their interpretations of the IAD. Although absolute uniformity might have to await the final

word by the United States Supreme Court, we now join the majority of states that, in our opinion, have adopted the sounder view. *See People v. Jackson,* 626 P.2d 723 (Colo. App. 1981); *Suggs v. Hopper, supra; People v. Diamond,* 59 Mich. App. 581, 229 N.W.2d 857 (1975); *People v. Batalias,* 35 A.D.2d 740, 316 N.Y.S.2d 245 (1970); *Engs v. District Court of Tulsa County,* 645 P.2d 1035 (Okla. Crim. App. 1982); *State v. Knowles,* 275 S.C. 312, 270 S.E.2d 133 (1980); *Blackwell v. State, supra. See also Wainwright v. Evans,* 403 So.2d 1123 (Fla. Dist. Ct. App. 1981); *Robison v. State,* 278 N.W.2d 463 (S.D. 1979).

*Suggs v. Hopper, supra,* represents one of the more frequently cited opinions on this point. Suggs, while serving a sentence in Georgia for murder, was informed that there was an outstanding warrant for his arrest in Florida. The prisoner sought to have the Georgia court strike the warrant from his records as it interfered with his eligibility for parole, citing Article III of the Interstate Agreement on Detainers. The Georgia Supreme Court concluded: "Suggs' petition is without merit because the statute by its terms relates only to an 'untried indictment, information or complaint,' and does not apply to warrants for arrest for probation violation." *Id.,* 215 S.E.2d at 247.

In *Blackwell v. State, supra,* Blackwell was incarcerated in Florida when Tennessee lodged a detainer against him for violation of probation. The prisoner took proper steps to avail himself of the IAD but Tennessee authorities failed to bring him back to the State. In concluding that the IAD did not apply to cases of violation of probation, the court reasoned that

> the detainer involved herein was not based on any "untried indictment, information or complaint"; instead, it was based on a probation violation capias. . . . We interpret the terms "untried" and "complaint," as used in the Compact, as being synonymous with, or at least in the nature of, an untried indictment or information, since some jurisdictions use the term "complaint" in lieu of the

terms "indictment" or "information." The term "untried" refers to matters which can be brought to a full trial. In a probation revocation proceeding the trial has already been held, and the defendant has been convicted. In such a hearing, the defendant comes before the court in a completely different posture than he does at his trial before conviction. [*Id.,* 546 S.W.2d at 829.]

Clipper cites *Gaddy v. Turner,* 376 So.2d 1225 (Fla. Dist. Ct. App. 1979), as support for his position. In *Gaddy* the District Court of Appeals of Florida for the Second District analyzed the purpose behind the IAD and concluded that the same dangers inherent in detainers for untried criminal charges were operative in detainers for violation of probation. The intermediate appellate court further found it paradoxical for the state to contend that it could avail itself of a detainer to secure an out-of-state prisoner's presence but assert that it was not bound by the "procedural requirements imposed by the Detainers Act." *Id.,* 376 So.2d at 1228.

*Gaddy* is, at best, questionable authority for the proposition that a detainer for violation of probation falls within the ambit of the IAD. Besides being a case decided by an intermediate appellate court, it is contrary to other authority in its own jurisdiction. In *Wainwright v. Evans, supra,* the same level court, though from the Fifth District rather than the Second, found that the IAD did not apply to detainers for violation of parole and apparently disapproved the holding in *Gaddy,* finding it illogical and inconsistent with Florida precedent "[t]o afford one who absconds to another state as a probationer . . . the right to a dispositive hearing within 180 days and to deny such right to one who is in the other state pursuant to the terms of his parole. . . ." *Id.,* 403 So.2d at 1124. *See also Maggard v. Wainwright,* 411 So.2d 200 (Fla. Dist. Ct. App. 1982), *petition denied,* 418 So.2d 1280 (Fla. 1982), *cert. denied,* U.S. , 103 S.Ct. 309, 74 L.Ed.2d 289 (1982) (expressly disapproving of *Gaddy).* *Wainwright v. Evans, supra,* goes on to cite *State v. Knowles, supra,* and *Suggs v. Hopper, supra,* approvingly,

both of which hold that a probation revocation is not an untried indictment, information or complaint. These cases demonstrate overwhelming support for the position adopted by this Court.

Clipper also contends that even if the IAD does not apply, the State's delay in holding a hearing requires that the petition be dismissed. He maintains that the delay in affording him a hearing by the State was unreasonable and mandates dismissal, citing *State v. Berry,* 287 Md. 491, 413 A.2d 557 (1980). In *Berry,* this Court addressed the acceptability of delaying a probation revocation hearing until after the expiration of the probationary period. The trial court issued an arrest warrant for the probationer three days prior to the expiration of the probationary period; however, the warrant was not served for over two years and the hearing ultimately was held over a month later. The only explanation for the delay was a reference by the court clerk to pending criminal charges, resulting in several delays. The Court found that there could have been no prejudice caused by the delay because of the limited issue involved at the probation revocation hearing. However, the court elucidated a general test of reasonableness in determining the acceptability of delaying a revocation hearing:

> [W]e think it fair to say that, at a minimum, the State should make reasonable efforts to initiate the proceedings and to locate and serve the defendant with process. . . . While what action is timely, diligent or reasonable will differ on a case by case basis, we do believe that inactivity and inattention by the State for an inordinate period of time, *where the defendant has been available* and has not concealed his whereabouts, may be sufficient to persuade a court that fundamental fairness should prevent the State from proceeding with the revocation hearing. *[Id.,* 287 Md. at 500 (emphasis supplied).]

In the instant action, the delay was not unreasonable and, furthermore, Clipper was not prejudiced by the delay.

Clipper's unavailability for the revocation hearing was not due to inattentiveness or negligence on the part of the State but, rather, from his confinement in another jurisdiction as the result of an attempted robbery conviction. Once Clipper was released from Lorton he was returned to Maryland and within one month he had a hearing on the matter. As in *Berry,* no prejudice could have resulted from the relatively short delay involved because of the limited nature of the issue at the probation revocation hearing — his violation of a condition of probation. The delay could not have affected Clipper's ability to defend himself at this hearing. In our view this case does not represent an unreasonable delay such as to deny Clipper due process. *See also Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Mauney v. Garrison,* 558 F.2d 214 (4th Cir. 1977).

Lastly, Clipper asserts that the Double Jeopardy Clause was violated when he was first placed on probation, then subsequently imprisoned on the same charge. The short answer to this is that "there is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Probation is by definition conditional; therefore, the defendant is on notice that breaching those conditions may lead to the reinstatement of his original sentence. That original sentence is the only true punishment; the probation revocation is merely the withdrawal of favorable treatment previously accorded the defendant.

We find no merit in any of the arguments advanced by Clipper and we affirm the judgment of the Circuit Court.

> *Judgment affirmed.*
> *Appellant to pay the costs.*