534 A.2d 371·

**STATE of Maryland**

v.

**Russell James SMITH.**

**No. 528, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Dec. 9, 1987.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Alexander Williams, Jr., State's Atty. for Prince George's County and Thomas A. Krehely, Jr., Asst. State's Atty. for Prince George's County on the brief, Upper Marlboro), for appellant.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and MOYLAN and BISHOP, JJ.

GILBERT, Chief Judge.

"[W]ords are chameleons, which reflect the color of their environment." *Commissioner of Internal Rev. v. National Carbide Co.*, 167 F.2d 304, 306 ([2d Cir.] 1948). "The same words, in different settings, may not mean the same thing." *Skelly Oil Company v. Phillips Co.*, 339 U.S. 667, 678, 70 S.Ct. 876 [882], 94 L.Ed. 1194 (1950).

We are here asked to determine whether an "Arrest Warrant on Charging Document" constitutes an untried "complaint" within the meaning of the Interstate Agreement on Detainers (IAD)[1], Md.Code Ann. art. 27, § 616A *et seq.* (1982 Repl.Vol.).

The factual predicate upon which the question to us is posed may be briefly stated. Russell James Smith Jr. is alleged to have broken into and entered a MAACO Auto Body Shop in Prince George's County, Maryland, on January 26, 1986. An "Arrest Warrant on Charging Document" was issued on February 13, 1986. The warrant given to the Prince George's Police Department specifically charged

---

[1]. The Interstate Agreement on Detainers is a compact among forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). Only Louisiana and Mississippi have not, as of this writing, adopted the agreement.

Smith with the offenses of "++ BREAK & STEAL—SHOP ETC +++ Code 2–2203."

Significantly the warrant provided in part:

"IF DEFENDANT IS IN CUSTODY FOR ANOTHER OFFENSE, this Warrant is to be lodged as a detainer for the continued detention of the Defendant for the offense charged in the charging document. When the Defendant is served with a copy of the charging document and Warrant, the Defendant shall be taken before a judicial officer of the District Court."

Having determined that Smith was incarcerated in the District of Columbia, the State, on March 28, 1986, lodged a detainer against Smith. When he was notified by the prison officials at Lorton of the detainer, Smith exercised his right pursuant to Article III of the IAD (Md.Ann.Code art. 27, § 616D), and he requested a final disposition of the Maryland charges. The State received Smith's request on June 17, 1986. One hundred fifty-two days later, the State, in order to gain temporary custody over Smith, served him in the District of Columbia with another detainer. Finally on January 21, 1987, Smith was indicted. As can readily be seen, the indictment was handed up two hundred eighteen days after Smith's request for disposition had been received by the proper State authorities. Not unexpectedly, Smith moved to dismiss the indictment on the ground that the State had failed to bring him to trial within the IAD's prescribed one hundred eighty days from the date of his request for disposition. Therefore, said Smith, the State, pursuant to the terms of the IAD, was without jurisdiction to try him. Md.Ann.Code art. 27, § 616F(c); *see also Hoss v. State,* 266 Md. 136, 292 A.2d 48 (1972); *Dennett v. State,* 19 Md.App. 376, 384, 311 A.2d 437 (1973).

Smith's motion was heard by Judge Howard A. Chasanow, who dismissed the indictment against Smith. The State appealed.

The *Maryland Extradition Manual* was published in 1985 [2] "through the assistance" of the then Governor, Attorney General, Secretary of State and the State's Attorney Coordinator.[3] The manual, edited by Nolan H. Rogers, Esq., an Assistant Attorney General, declares:

"A detainer is a formal or informal request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the custodian to notify the agency when the release of the prisoner is imminent. It can be an arrest warrant, indictment, commitment order, judgment, or even a letter or note sent to the custodian of a prisoner by a prosecutor, court, police chief, sheriff, or parole board." (Footnote omitted).

*Maryland Extradition Manual*, "Detainers," p. 43. The State, in light of that manual, would be hard pressed to assert that the arrest warrant was not a detainer. The question is rather whether the arrest warrant detainer is sufficient to trigger the provisions of the IAD.

Article III of the IAD (Md.Ann.Code art. 27, § 616D) articulates the methodology by which a prisoner may initiate the resolution of pending charges:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state,[4] and whenever during the continuance of the term of imprisonment there is *pending* in any other party state any *untried indictment, information or complaint* on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to

---

**2.** We infer that the manual was published in that year because the latest citation in the manual is to Carchman v. Nash, a United States Supreme Court case decided July 2, 1985.

**3.** On the cover page of the manual appears the legend: "This Manual was published through the assistance of Harry Hughes, Governor; Stephen H. Sachs, Attorney General; Lorraine Sheehan, Secretary of State; and David H. Hugel, State's Attorneys' Coordinator."

**4.** Of course if the prisoner is incarcerated in a non-party state, the IAD would be inapplicable. *See* n. 1.

the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[.]" (Emphasis added).

To answer the particular question posed at the outset of our opinion, we must focus on the italicized words "pending ... untried indictment, information or complaint." The State's argument, reduced to its most simplistic form, runs as follows: An arrest warrant is not an indictment, information or complaint, hence the provisions of the IAD are not ignited by a prisoner's demand that he be tried because of the detainer.

The State, in reliance upon *State v. Gee*, 298 Md. 565, 471 A.2d 712 (1984), argues that since an arrest warrant-statement of charges for a felony does not require a person to go to trial in Maryland [5] it cannot be considered a "complaint" under the IAD. *Gee* held that a warrant-statement of charges "does not mark the onset of formal prosecutorial proceedings to which the Sixth Amendment guarantee [of a speedy trial] is applicable[.]" *Gee*, 298 Md. at 574, 471 A.2d 712. *Gee*, however, was not explicating the meaning of complaint within the IAD but was addressing the question of when the Speedy Trial, Sixth Amendment right commences.

██ Admittedly, the arrest warrant is not an indictment or information. Moreover, the State avers that it is not a "complaint" in the technical sense the word is employed in § 616D. The State contends that since the words "indictment" and "information" refer to *formal* charging documents the word "complaint" should also be interpreted as a reference to a formal charging document. This somewhat hypertechnical pilpul approach was followed in *United States v. Bottoms*, 755 F.2d 1349 (9th Cir.1985). There a

---

**5.** Trial for most felonies may be had only in circuit court upon an indictment or an information. Md.Rule 4–201(c)(1) and (2).

post-escape arrest warrant was held not to be a complaint under the IAD. The *Bottoms* Court applied the doctrine of *ejusdem generis* [6] to define "complaint" narrowly as a "legal word of art" which did not include warrants. *Bottoms*, 755 F.2d at 1350. What *Bottoms* either overlooks or ignores is that a rule of statutory construction provides only an aid to interpretation. A rule should not be invoked to restrict word meanings and thereby subvert the purposes of the statute. We think the *Bottoms* court misinterpreted the statute, in favor of strained reliance upon a rule that forced a conclusion that is contrary to the clear legislative intent. In that connection we believe that Judge Learned Hand had it right when, in *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir.1944), he penned:

> "There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route. As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situations; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final."

The *Bottoms* court seemingly paid little, if any, heed to Article IX of the IAD (Md.Ann.Code art. 27, § 616J) which directs that "[t]his agreement shall be *liberally construed* so as to effectuate its purposes" (emphasis added). A liberal construction, the Court of Appeals said in *Smith v. Higinbothom*, 187 Md. 115, 125, 48 A.2d 754 (1946), is that which "adopt[s] the meaning which will harmonize with the general scheme of the statute and assist in carrying out the legislative purposes."

---

**6.** Where general words in a statute follow the designation of particular things or clauses of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned. *Smith v. Higinbothom*, 187 Md. 115, 130, 48 A.2d 754 (1946).

The purpose of the IAD is declared by the Legislature in Md.Ann.Code art. 27, § 616B. There it is stated that "the purpose of this agreement [is] to encourage the expeditious and orderly disposition of ... charges [outstanding] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints."

If the State were to prevail, it would in effect rewrite the IAD by allowing itself to lodge a detainer on the basis of a warrant and then withhold the triggering of the IAD through the simplistic method of not obtaining an indictment or filing a criminal information. That the obtaining of an indictment is time consuming is an unavailing argument, in light of the fact that in Maryland, as in a majority of the states, the prosecutor may proceed by way of a criminal information. No indictment is necessary even in felony cases. *See* Gilbert, "The Grand Jury—An Indictment," 18 U.Balt.L.F. 4, 6 (No. 1, Fall 1987).

Permitting the State to postpone the commencement of the operation of the IAD sanctions the very thing the Compact was designed to prevent—an inmate's languishing in a limbo, a suspended animation, pending disposition of charges in the State that issued the detainer. According to Rogers, *Maryland Extradition Manual*, "Detainers," p. 43, "With the recognition that detainers produce uncertainties for prisoners which render treatment and rehabilitation less effective, the Interstate Agreement on Detainers was promulgated by the Council of State Governments." A detainer, once lodged against an inmate, prevents him or her from securing parole or obtaining or keeping many of the minor privileges, such as intra-prison employment, afforded those inmates who are not under the impediment of detainer.

A case analogous to the one before us caused a Tennessee court to remark, "[D]ue to the remedial nature of this legislation [IAD] it is to be construed liberally in favor of those it is intended to benefit, to wit: inmates incarcerated in one state with charges pending in another state." *State v. Black*, 594 S.W.2d 738, 740 (Tenn.Crim.App.1979). Pat-

ently, the IAD's impetus is to expedite the resolution of charges outstanding against a prisoner in a Compact jurisdiction.

The legislative history of the IAD reveals that adoption of the Compact was "motivated in part by a practice of filing detainers based on untried criminal charges that had little basis" in fact. *Carchman*, 473 U.S. at 729, 105 S.Ct. at 3408. Because even unsubstantiated detainers may have a deleterious effect on the prisoner's treatment, a prisoner must be afforded an opportunity to purge his record of detainers. *Id.* at 730, 105 S.Ct. at 3408, 3409. There are, however, exceptions, not here applicable, such as detainers based on probation or parole violations which do not expose the prisoner to a full trial and are, therefore, outside the intended scope of the IAD. *Clipper v. State*, 295 Md. 303, 310–11, 455 A.2d 973 (1983); *Carchman*, 473 U.S. at 729–734, 105 S.Ct. at 3408–3411.

■ The sum and substance of what we have said is that a felony arrest warrant detainer lodged against a prisoner in a State that is a party to the IAD is an "untried complaint" within the meaning of the IAD. Judge Chasanow properly dismissed the indictment that was brought against Smith because of the State's failure to bring Smith timely to trial.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.