557 A.2d 1343

STATE of Maryland

v.

**Russell J. SMITH.**

No. 15, Sept. Term, 1988.

Court of Appeals of Maryland.

May 30, 1989.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

The issue here is whether the 180 day speedy trial provision of the Interstate Agreement on Detainers ("IAD") applies to a detainer based simply upon a felony arrest warrant and an accompanying statement of charges. We hold that it does.

## I.

Respondent Smith was serving a sentence in the District of Columbia when the District Court of Maryland issued a warrant for his arrest. To obtain the warrant, Detective R. J. Sheehan filed a sworn application for a statement of charges. *See* Md.Rule 4–211(b)(1) (describing procedure for

filing a statement of charges before arrest).[1] That application alleged in detail the facts relating to Mr. Smith's proposed arrest.[2] A District Court commissioner agreed that probable cause existed and issued a statement of charges along with an arrest warrant on the same piece of paper. *See* Md.Rule 4–212(d)(1). The document was entitled "**Arrest Warrant on Charging Document**."

On March 28, 1986, the State's Attorney for Prince George's County lodged that document as a detainer against Smith. On June 17, 1986, the Prince George's County State's Attorney's Office received Smith's request that all "untried indictments, informations or complaints" against him be disposed of within 180 days pursuant to the IAD. Smith was indicted on January 21, 1987—218 days after the State's Attorney's office received his request for disposition.

The defendant moved to dismiss the case on the ground that the warrant based on the statement of charges was an untried complaint, which had not been brought to trial

---

**1.** Unless otherwise noted, we refer to the Maryland Rules in effect in 1986.

**2.** Affirming under the penalties of perjury that the contents of the application were true to the best of his knowledge, information and belief, Detective Sheehan stated the following:

I, the undersigned, apply for a statement of charges and a summons or warrant which may lead to the arrest of the above-named Defendant because on or about January 26th, 1986 at 8411 Old Marlboro Pike, Forestville, Maryland, the above-named Defendant did break [into] and enter the T/A Maaco Auto Body Shop located at 8411 Old Marlboro Pike, Forestville, Maryland by breaking the garage door window with a pick-ax, reaching in [an] unlocked garage door, [and] entering [the] t/a. [He] went to the office and removed a floor safe which contained two checking accounts for the T/A, then fled with [the] safe out the garage door. [The] property taken [was] valued at $200.00. On January 27th 1986, the following day, the defendant forged and uttered a check at Penmar Liquors for $250.00. [The check] was one of the ones taken in the break-in. Further the defendant was an ex-employee of the T/A and would have known where the T/A safe was located, [thereby leaving] nothing else disturbed. Also the check written has similar handwriting with that of the T/A's employee's withholding form.

promptly under the IAD. Judge Chasanow granted the motion to dismiss, and the Court of Special Appeals affirmed. *State v. Smith*, 73 Md.App. 378, 534 A.2d 371 (1987). We granted certiorari to consider the matter.

## II.

Under the IAD, a prisoner in one state may, through written request, compel the disposition of "any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner" by another state within 180 days after the state prosecutor's office has received that request. Maryland Code (1957, 1987 Repl. Vol.) Art. 27, § 616D(a) (codifying Article III of the IAD).[3] In this case, the State's Attorney's office failed to act within 180 days after Smith's request for disposition. If the felony **"Arrest Warrant on Charging Document"** involved here invoked the IAD, the charges against Smith were properly dismissed with prejudice. We therefore consider whether this document was an "untried complaint"

---

3. **616D. Request for disposition of untried indictment, etc.**
    (a) *Notice of imprisonment and request for disposition; time of trial; continuance; certificate of official having custody.*—Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. . . .
  Md.Code (1957, 1984 Repl.Vol.) Art. 27, § 616D(a); *see* 18 U.S.C.App. (1982) ("Enactment into law of Interstate Agreement on Detainers"). We recently considered this agreement in *Laster v. State*, 313 Md. 548, 546 A.2d 472 (1988). For a general discussion of this area of the law, see L. Abramson, *Criminal Detainers* (1979).

under the IAD. *See Clipper v. State,* 295 Md. 303, 307, 455 A.2d 973, 975 (1983) ("[I]t is clear that for the Agreement to become activated, there must be an untried indictment, information or complaint lodged against the prisoner evidenced by a detainer.").

### A.

"[T]he Detainer Agreement is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v. Adams,* 449 U.S. 433, 442, 101 S.Ct. 703, 708–09, 66 L.Ed.2d 641, 650 (1981). "The most natural interpretation of the words 'indictment,' 'information,' and 'complaint' is that they refer to documents charging an individual with having committed a criminal offense." *Carchman v. Nash,* 473 U.S. 716, 724, 105 S.Ct. 3401, 3405, 87 L.Ed.2d 516, 523 (1985).[4] In addition, we have noted that "complaint" "simply is a general term intended to refer to a charge that will require the prisoner to go to trial." *Clipper,* 295 Md. at 308, 455 A.2d at 976.[5]

The term "complaint" is not found in the "Criminal Causes" section of the Maryland Rules. However our rules do contain the term "Charging Document," which is defined as "a written accusation alleging that a defendant has committed an offense." Md.Rule 4–102(a). There are four

---

4. The Supreme Court added: "This interpretation is reinforced by the adjective 'untried,' which would seem to refer to matters that can be brought to full trial, and by Art. III's requirement that a prisoner who requests final disposition of the indictment, information, or complaint 'shall be *brought to trial* within 180 days. . . .' " *Id.* at 724, 105 S.Ct. at 3405, 87 L.Ed.2d at 523 (emphasis added in the original).

5. In *Clipper,* we found that notice of a probation violation does not constitute a complaint. We reasoned that the "purpose [of the IAD] would not be served by applying the IAD to the probation revocation situation, which does not involve a complex trial with its attendant dangers if delayed." *Id.* at 309, 455 A.2d at 976. Therefore such a proceeding is outside the protection of the IAD.

types of charging documents: citations, statements of charges, informations, and indictments.

The arrest warrant here was predicated on a statement of charges, which is defined as a "charging document, other than a citation filed in the District Court by a peace officer or by a judicial officer." Md.Rule 4–102(i).[6] As is true of all charging documents, a statement of charges "shall contain a concise and definite statement of the essential facts of the offense with which the defendant is charged...." Md.Rule 4–202(a). And "[a] statement of charges shall be signed by a peace officer or by a judicial officer." Md.Rule 4–202(b). Here, the application for the statement of charges required the complainant to swear to his account of the facts before a commissioner or judge. *See generally State v. Smith*, 305 Md. 489, 505 A.2d 511 (1986) (discussing role of a commissioner in issuing a statement of charges), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 552 (1986).

Under the federal system, a "complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a magistrate." Fed.R.Crim.P. 3; *see generally Black's Law Dictionary* 258 (5th ed. 1979). Such a complaint may be used as a basis for the issuance of a warrant. Fed.R.Crim.P. 4. Moreover, a federal criminal complaint activates, upon request for disposition, the timing requirement of Article III of the IAD. 18 U.S.C.App. (1982) (adopting Interstate Agreement on Detainers). The apparent similarity between a federal criminal complaint and a statement of charges suggests that the two be treated in a parallel fashion under the IAD—*i.e.* that they trigger the same time limitations.

---

6. A citation is "a . charging document, other than an indictment, information, or statement of charges, issued to a defendant by a peace officer or other person authorized by law to do so." Md.Rule 4–102(b). An information "is a charging document filed in a court by a State's Attorney." Md.Rule 4–102(e). And an indictment is "a charging document returned by a grand jury and filed in a circuit court." Md.Rule 4–102(d).

## B.

█ In addition to this federal analogy, the policies behind the IAD support the notion that an arrest warrant based on a charging document be treated as a complaint under the IAD. As stated by the Supreme Court, "legislative history ... emphasizes that a primary purpose of the Agreement is to protect prisoners against whom detainers are outstanding." *Cuyler*, 449 U.S. at 448–49, 101 S.Ct. at 712, 66 L.Ed.2d at 654.[7] The agreement itself states that its goals are 1) "to encourage the expeditious and orderly disposition of such charges" and 2) "to provide ... cooperative procedures" among the party jurisdictions to facilitate such disposition. Md.Code Ann. (1947, 1984 Repl.Vol.) Art. 27, § 616B (codifying Article I). Prompt disposition is needed for the following reasons:

> [A] prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing.

*Cuyler*, 449 U.S. at 449, 101 S.Ct. at 712, 66 L.Ed.2d at 654 (quoting H.R.Rep. No. 1018, 91st Cong., 2d Sess. 3 (1970); S.Rep. No. 1356, 91st Cong., 2d Sess. 3 (1970) U.S.Code Cong. & Admin.News 1970, p. 4864); *see also Smith v. Hooey*, 393 U.S. 374, 379, 89 S.Ct. 575, 577–78, 21 L.Ed.2d 607, 612 (1969); *see generally Clipper*, 295 Md. at 305, 455 A.2d at 974 ("The IAD was spawned by the extensive

---

7. In *Cuyler*, the Court found that, "[t]he remedial purpose of the [IAD] supports an interpretation that gives prisoners the right to a judicial hearing in which they can bring a limited challenge to the receiving State's custody request." *Id.* at 449, 101 S.Ct. at 712, 66 L.Ed.2d at 654–55.

criticism regarding the serious disadvantages the detainer system placed on prisoners."). These considerations are crucial in interpreting the IAD, given its mandate that it "be liberally construed so as to effectuate its purposes." Md.Code (1957, 1984 Repl.Vol.) Art. 27, § 616J (codifying Article IX).

The congressional concerns quoted above are present whether detainers are based on informations, indictments or felony arrest warrants predicated on statements of charges. The fact that, in the latter situation, the state's attorney must sometimes get a subsequent indictment before trial does not eliminate these concerns. Thus prompt disposal of a warrant and statement of charges within 180 days of a prisoner's request is an approach which advances the purpose of the agreement. If we were to reject such an approach, the state could issue detainers based on warrants and accompanying statements of charges without incurring any obligation under Article III of the IAD to promptly dispose of those charges upon prisoners' requests. *Cf. United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) (articulating similar points in finding that a writ of habeas corpus *ad prosequendum* is a "request" under Article IV, which invokes that provision's time limitations).[8]

---

**8.** There, the Court wrote:

It matters not whether the Government presents the prison authorities in the sending State with a piece of paper labeled 'request for temporary custody' or with a writ of habeas corpus *ad prosequendum* demanding the prisoner's presence in federal court on a certain day; in either case the United States is able to obtain temporary custody of the prisoner. Because the detainer remains lodged against the prisoner until the underlying charges are finally resolved, the Agreement requires that the disposition be speedy and that it be obtained before the prisoner is returned to the sending State. The fact that the prisoner is brought before the District Court by means of a writ of habeas corpus ad prosequendum in no way reduces the need for this prompt disposition of the charges underlying the detainer. In this situation it clearly would permit the United States to circumvent its obligations under the Agreement to hold that an ad prosequendum writ may not be considered a written request for temporary custody.

## C.

The State contends that because it could not have prosecuted all of Smith's alleged offenses on the basis of the statement of charges, that statement, in conjunction with Smith's request for disposition, could not have activated his rights under Article III of the IAD.[9] The State refers to our recent determination that Sixth Amendment speedy trial rights do not commence until "a defendant is subject to be tried on [the charging] document." *State v. Gee*, 298 Md. 565, 574, 471 A.2d 712, 716 (1984), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984).

We are unpersuaded by this argument. First, we note that *Gee* interpreted the term "accused" under the Sixth Amendment, rather than the meaning of "complaint" as it is used in the IAD. *Gee* is therefore not binding as precedent in this case. We note that once the Commissioner issued the statement of charges here, those charges could only be disposed of by trial or by action of the State's Attorney.[10] Thus the statement of charges here squarely placed the

---

*Mauro*, 436 U.S. at 362, 98 S.Ct. at 1848, 56 L.Ed.2d at 348.

**9.** Smith was eventually indicted for 1) breaking and entering, 2) taking money, 3) theft over $300, 4) theft under $300, 5) forgery, 6) uttering and 7) theft under $300. The District Court here had no jurisdiction over several of the felonies with which Smith was charged. Md.Code Ann. (1974, 1984 Repl.Vol.) Cts. & Jud.Proc. § 4–302(a); *see* Md.Code (1988 Cum.Supp.) Cts. & Jud.Proc. § 4–302 (current version of statute). To bring all the charges against the defendant, the state's attorney had to obtain an indictment and proceed to the circuit court. Thus the State argues: "there were no pending charges against Smith at the time that he made his request for disposition and, as a result, no triggering of the 180 day speedy trial provision of Article III."

**10.** On the back of the application for a statement of charges, the following notice was given to the detective: "You are making an application for a charging document which may lead to the arrest and detention of the individual you are charging. If, as a result of your application, a charging document is issued by the commissioner, it will not be possible for the commissioner to withdraw the document. The charge may only be disposed of by trial or by action of the State's Attorney."

prisoner on the path toward trial, although formal prosecution had not yet technically begun for purposes of the Sixth Amendment. *See Gee,* 298 Md. at 574, 471 A.2d at 716.

Second, under the federal system, a defendant cannot be tried on a complaint alone; instead the prosecutor must obtain an indictment or information. Fed.R.Crim.P. 7(a); [11] *see* 1 C. Wright, *Federal Practice & Procedure: Criminal* § 121, at 338 (2d ed. 1982). Yet such a complaint would nevertheless activate the IAD upon request for disposition. The State's reasoning that the prisoner must be capable of being tried on the charging document in order to invoke the IAD is at odds with the way in which federal criminal complaints are handled.

The State also relies on *United States v. Bottoms,* 755 F.2d 1349 (9th Cir.1985) which holds that a warrant does not activate disposition rights under the IAD. *See Blackey v. District Court,* 755 P.2d 1380, 1384 (Mont.1988) (relying on *Bottoms* in holding that an arrest warrant based on an affidavit of probable cause was not a complaint under the IAD). *But see State v. Black,* 594 S.W.2d 738, 740 (Tenn. Crim.App.1979) ("Giving the act the liberal construction mandated by the Supreme Court, we hold that a 'state warrant' is a 'complaint' for purposes of the [IAD]."). In *Bottoms,* the prisoner was being detained "by virtue of [an] arrest warrant and the marshal's advice reciting the authority of that warrant." *Id.* at 1350. According to the Ninth Circuit, such a device did not technically constitute a complaint under the IAD or "as that word is defined in Fed.R. Crim.P. 3." *Id.* Therefore the warrant and advice could not activate the IAD time limitations under Article III.

---

11. Rule 7(a) states in part:
An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information.

*Bottoms* is not directly on point with the instant case. Whereas Bottoms' warrant was based on the "advice of a marshal," Smith's warrant was issued based on a statement of charges roughly parallel to a federal criminal complaint. Moreover, as Judge Wilner in the court below pointed out, the Ninth Circuit's opinion strictly construing the word "complaint" seems to ignore the IAD's admonition to give effect to the compact's purpose. *See* 73 Md.App. at 382–85, 534 A.2d at 373–75.

### III.

In light of the underlying purpose of the IAD and the foregoing analogy to federal criminal complaints, we conclude that an arrest warrant based on a statement of charges constitutes a complaint sufficient to invoke the timing requirements of Article III of the IAD.[12] "[I]n the event that an action on the ... complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided ..., the appropriate court of the jurisdiction where the ... complaint has been pending shall enter an order dismissing the same with prejudice...." Md.Code Art. 27, § 616F(c). Here the prosecutor failed to bring the defendant to trial within the required period. The trial court therefore properly dismissed the indictment with prejudice.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY, MARYLAND.

---

12. Given the presence of a statement of charges in this case, we do not reach the question of whether a warrant without a charging document would activate the time limitations of Article III of the IAD. We therefore do not consider the fact that the statute on *intrastate* detainers expressly applies to "untried indictments, informations, warrants, or complaints," Md.Code (1957, 1984 Repl.Vol., 1988 Supp.) Art. 27, § 616S(b), while the *interstate* agreement mentions only indictments, informations and complaints. *Id.* at § 616D(a).