William C. PARKER, Appellant,

v.

UNITED STATES, Appellee.

No. 89–1148.

District of Columbia Court of Appeals.

Argued March 13, 1991.
Decided April 29, 1991.

Veronice A. Holt, Washington, D.C., appointed by this court, for appellant.

Sydney J. Hoffmann, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before FERREN, TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant, incarcerated in Maryland, was brought into the District of Columbia to be tried on two counts relating to a robbery with respect to which a detainer had been filed with the Maryland authorities. After his arrival in the District, the two robbery counts were dismissed with prejudice for failure to bring appellant to trial within the 180–day time limit specified in Art. III of the Interstate Agreement on Detainers Act ("IAD"), D.C.Code § 24–701 (1989). However, appellant while here was indicted on five additional counts covering unrelated crimes, and in a conditional plea pled guilty to three of those counts.

The principal issue on this appeal is whether the new counts were also subject to the time limit of Art. III, and thus should also have been dismissed with prejudice under the IAD. We hold that the time limit of Art. III did not apply to the new counts. We further hold that even if, under the provisions of the IAD, appellant should have been returned to Maryland upon the dismissal of the robbery counts and new proceedings begun for his redelivery here for trial on the new counts, no prejudice resulted from the failure to do so, and any violation was therefore harmless.

I

During April of 1988, appellant was incarcerated in Maryland. On April 8, 1988, a warrant for the arrest of appellant was issued by a judge of the Superior Court of the District of Columbia, based on a complaint[1] and affidavit relating exclusively to the robbery of a United Airlines ticket office in the District. Several days later, the

---

1. Super.Ct.Crim.R. 3 provides in pertinent part: "The complaint is a written statement of the essential facts constituting the offense charged." Super.Ct.Crim.R. 4(a) provides in pertinent part: "If it appears from the complaint, or from an affidavit filed with the complaint, that there is probable cause to believe that an offense has been committed and that the person named in the complaint has committed it, a warrant for the arrest of that person shall be issued by the Court to any officer authorized by law to execute it."

government caused a detainer to be lodged against appellant with the proper authorities in Maryland.

■ On November 2, 1988, appellant submitted a demand for disposition of pending charges in the District of Columbia pursuant to Art. III of the IAD.[2] On March 14, 1989, the government filed with the Superior Court a "Petition for Writ of Habeas Corpus Ad Prosequendum," which was issued later that day by a judge of that court.[3] On March 27, pursuant to that writ, appellant arrived in the District of Columbia.

On April 4, a two-count grand jury indictment was filed relating to the United Airlines incident. Trial was originally set for May 9 but postponed, over appellant's objection, so that the government could obtain a superseding indictment, containing both the original United Airlines counts and five additional counts based upon five robberies occurring in the same general time frame as the United Airlines robbery[4] but otherwise having no connection with it. On May 15, appellant filed a motion to dismiss the indictment, arguing that the government had failed to bring his case to trial within 180 days of his demand under Art. III. On May 17, the trial court heard appellant's motion seeking dismissal of the United Airlines counts, but the hearing was expanded to consider the question whether the additional counts in the superseding indictment, filed the previous day, had to be dismissed as well.

The trial court dismissed the United Airlines counts[5] but refused to dismiss the new counts in the indictment, ruling that the government's detainer and appellant's subsequent Art. III demand related only to the United Airlines counts. With respect to the new counts, the government and the trial court were apparently of the view that the 120–day time limit of Art. IV applied,[6]

2. Article III(a) provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint....

Article V(c) provides:

> [I]n the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice....

3. As a creation of Congress, the Superior Court has authority under the All Writs Act, 28 U.S.C. § 1651 (1990), to issue writs of habeas corpus *ad prosequendum. United States v. Palmer,* 393 A.2d 143, 146 (D.C.1978).

4. The first of the newly charged robberies occurred on December 27, 1987, and the last on March 18, 1988. The United Airlines robbery occurred on March 16, 1988. Each of the robberies was of a different store or office.

5. The issue was the date on which the 180–day time period of Art. III, *see* note 2 *supra,* began to run. Appellant argued that the operative beginning date was either November 2, 1988, the day he signed the demand, or November 16, 1988, the day the demand was received by the United States Marshal Service in Baltimore. The government's position was that the beginning date was November 25, 1988, the day the demand was received by the United States Attorney's office in the District of Columbia. The trial court ruled that the operative beginning date was November 16. The government has not appealed this determination and we express no opinion with respect to its correctness.

6. Article IV(a) provides:

> The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated....

Article IV(c) then provides:

> In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State.

obliging the government to bring appellant to trial by July 25, 1989, that being 120 days after appellant's arrival in the District of Columbia on March 27. Appellant's demand to be returned to Maryland was denied.[7]

A motion for reconsideration was subsequently denied, and appellant on July 10 pled guilty to three counts of the then pending indictment,[8] conditioned on his right to appeal the court's earlier refusal to dismiss the new counts on the ground that they, like the United Airlines counts, were subject to appellant's Art. III speedy trial rights under the IAD.

## II

■ An examination of the language of the IAD clearly shows that the trial court was correct in refusing to dismiss the new counts as violative of rights of the appellant under Art. III of the IAD.

■ First, rights under Art. III come into being only when "there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner." Art. III(a). Thus, even an outstanding indictment in another state generates no Art. III rights in and of itself; the key is the lodging of a detainer based on that untried indictment. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

Second, even where a detainer has been filed against a prisoner, a "request for final disposition" under Art. III(a) operates, according to its terms, as a request only "for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed." Art. III(d).

In conformity with these provisions, Art. V(c) provides that "in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the [180–day] period provided in article III," that indictment, information, or complaint must[9] be dismissed with prejudice, "and any detainer based thereon shall cease to be of any force or effect."

■ Thus, these provisions focus on the problem of detainers. By their terms, they deal only with indictments, informations, or complaints on the basis of which detainers have been filed. They do not otherwise affect situations in which one jurisdiction may seek to obtain custody of a person located in another jurisdiction. For example, in the District of Columbia, writs of habeas corpus *ad prosequendum* have been and continue to be a traditional way of securing the presence of a person located in another jurisdiction. The Supreme Court has directly held that prisoners who are brought into a jurisdiction pursuant to a federal writ to be tried for crimes with respect to which no detainer is pending have no rights under the IAD. *United States v. Mauro, supra*, 436 U.S. at 361, 98 S.Ct. at 1847.[10]

---

The sanction for failure to comply with this time limit is dismissal with prejudice under Article V(c), quoted in note 2 *supra*.

7. Appellant filed in this court a petition for a writ of mandamus which we denied by order of June 21, 1989.

8. On July 5, 1989, a second superseding indictment was filed, eliminating the United Airlines counts pursuant to the trial court's ruling of May 17.

9. In *Tucker v. United States*, 569 A.2d 162, 166 n. 8 (D.C.1990), we left open the issue whether, and in what circumstances, a defendant may have to show prejudice as a prerequisite to dismissal of charges under the IAD.

10. However, as *Mauro* also holds, if a detainer is lodged against a prisoner in another jurisdiction, the issuance of a writ of habeas corpus *ad prosequendum* must be treated as a request under Art. IV of the IAD and thus its 120–day time limit applies. If the prisoner has already filed a request under Art. III, then the 180–day time provision in that article governs. *Felix v. United States*, 508 A.2d 101, 107 (D.C.1986). Interpretation of the IAD, being an agreement entered into with the approval of Congress under the Compact Clause, is a matter of federal law. *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 708, 66 L.Ed.2d 641 (1981).

Appellant's suggestion that *Felix* controls this case is misplaced. In *Felix*, the detainer against the appellant was based on a single robbery

■ In the case before us, there can be no substantial dispute that the detainer lodged in Maryland was based only on the United Airlines offense. The detainer itself states, in operative part: "Subject is wanted by this Department on charges of Robbery. The warrant was signed and issued on April 8, 1988." Furthermore, at the time the detainer was lodged, the only "untried indictment, information, or complaint" upon which the detainer could have been based was the complaint on the United Airlines offense, which led to the issuance of the arrest warrant for appellant and in turn the detainer itself lodged in Maryland.[11] The coupling of the word "complaint" with "indictment" and "information" is a solid indication that "complaint" refers to a formal document of some type initiating criminal action against an individual, and not inchoate matters with respect to which no court proceedings of any sort have been initiated. In the words of the Supreme Court, addressing the precise language at issue here, "[t]he most natural interpretation of the words 'indictment,' 'information,' and 'complaint'

is that they refer to documents charging an individual with having committed a criminal offense." *Carchman v. Nash*, 473 U.S. 716, 724, 105 S.Ct. 3401, 3405, 87 L.Ed.2d 516 (1985).[12]

■ Appellant argues that notwithstanding the words of the IAD, its provisions should be deemed applicable as well to any matters which may be under investigation in which the prisoner may be implicated, or at least those as to which the government may have an active intent to bring formal charges.[13] We fail to see how such an interpretation is warranted under either the language or the intent of the IAD.[14] The prisoner cannot by filing an Art. III request force the government to any premature decision whether or not to instigate formal charges against him. The prisoner's rights under the IAD do not extend so far. While it is true that the IAD's provisions are to be "liberally construed," Art. IX, this does not warrant a disregard of the clear language and structure of the IAD.[15]

Appellant contends that what it terms a similar "hypertechnical" interpretation of

count. After his return to the District pursuant to his Art. III request, an indictment was filed charging the appellant with a number of offenses in addition to that on which the detainer was based. The only issue presented in *Felix* was whether, as argued by appellant, the 120–day time limit of Art. IV (which had not been met) applied rather than the 180–day time limit of Art. III, because the appellant had been brought to the District through a writ of habeas corpus *ad prosequendum.* Since all of the offenses were in fact tried within the 180–day time limit of Art. III, we simply did not reach the issue presented to us here; *viz.,* whether the Art. III time limit applies at all to newly charged counts.

11. The same was true as of the date when appellant sent his Art. III demand.

12. A corollary of this analysis is that not every document denominated a "detainer" filed with a *sending state constitutes a detainer within the* meaning of the IAD. In *Carchman,* the Court held that a detainer based upon a probation violation cannot be the subject of an Art. III demand, since a probation-violation charge does not accuse an individual of having committed a criminal offense in the sense of initiating a prosecution or being brought to trial.

13. Appellant asserts that a D.C. detective visited him in his Maryland jail in July of 1988, before he submitted his Art. III request, and told him

that other charges would be brought against him if he did not admit guilt in the United Airlines case, and notes that the government prosecutor also indicated at a pretrial hearing that she "held back doing certain things on this case, hoping that Mr. Parker would plead." The unindicted matters apparently played a significant role in the plea bargaining upon appellant's removal to the District.

14. With respect to the history and general purposes of the IAD, see *Carchman v. Nash, supra,* 473 U.S. at 726–29, 105 S.Ct. at 3406–08; *Felix v. United States, supra,* 508 A.2d at 103–05, and cases cited.

15. We specifically do not deal here, however, with the possible applicability of the IAD in situations where at the time the detainer is filed, other untried "indictments, informations, or complaints" already exist in the receiving state or where such formal charges come into being prior to any request made under Arts. III or IV or even prior to the prisoner's delivery to the receiving state. The language in *Cuyler v. Adams, supra* note 10, 449 U.S. at 444, 101 S.Ct. at 709, that an Art. III request "under the Agreement automatically extends to *all* pending charges in the receiving State" (emphasis in original), if not simply an imprecise paraphrase of Art. III(d), presumably contemplates such a circumstance.

the IAD was rejected in *State v. Smith*, 73 Md.App. 378, 534 A.2d 371 (1987). In that case, the state lodged a detainer based on an arrest warrant against Smith, who was incarcerated in the District, and who, upon receiving notice thereof, requested a final disposition of the Maryland charges. Smith was indicted in Maryland two hundred and eighteen days after he filed his IAD request. The state argued that the arrest warrant was not an "untried indictment, information or complaint" which could ignite Smith's IAD demand. The court rejected the state's argument, concluding that the state effectively would be rewriting the IAD if it were allowed to "lodge a detainer on the basis of a warrant and then withhold the triggering of the IAD through the simplistic method of not obtaining an indictment or filing a criminal information." *Id.* 534 A.2d at 374.

However, in *Smith*, it was uncontroverted that the arrest warrant underlying the detainer related to precisely the same charges as those for which the state sought to try the defendant. The only possible way of avoiding the IAD time restraint would have been to hold that the arrest warrant could not form the basis of an IAD detainer. The Maryland court held to the contrary, a result in accord with our decision in *Tucker v. United States, supra* note 9, 569 A.2d 162 (discussing circumstances where arrest warrant may constitute a detainer). The question we are faced with here is the very different one of the scope of the prisoner's rights under an Art. III request based upon what is unarguably a detainer under the IAD.

### III

■ A related legal issue presented by the facts in this appeal is the question of

the government's right to try appellant on the new counts in the courts of the District of Columbia in light of Art. V(d) and (e) of the IAD,[16] which provide:

(d) The temporary custody [of the receiving state] referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in the one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction....

(e) At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State.

These provisions did not deprive courts in the District of Columbia of *jurisdiction* to try appellant on the five counts. *See Brown v. District Court*, 194 Colo. 225, 571 P.2d 1091, 1092 (1977) (en banc) ("The circumstances by which an accused person comes before the court have no bearing on the court's power to try him," citing *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952)); *State v. Casuso*, 253 N.W.2d 919 (Iowa 1977). However, insofar as appellant's presence here depended upon the IAD, they did place upon the government the obligation to return the prisoner to Maryland once it had dismissed the charges upon which the detainer was based, at least upon the request of either the prisoner or the sending state.[17] *Cooney v. Fulcomer*, 886 F.2d 41 (3d Cir.1989).

■ We see no grounds to support the position that although appellant's Art. III request did not encompass the five addi-

16. Also relevant is Art. III(e), which provides that any request under Art. III "shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) hereof." The version of the IAD at D.C.Code § 24–701, apparently erroneously, refers to "paragraph (b)."

17. Art. V(d) permits the temporary custody of the receiving state to continue for the purpose

of trial not only on cases contained in the untried indictments, informations, or complaints which form the basis of the detainer, but also "any other charge or charges arising out of the same transaction." We need not decide here whether a trial on such other charges is also subject to the time limits of Arts. III and IV. No argument is made here that the new counts arose out of the "same transaction" as the United Airlines robbery.

tional charges, the government could hold him here on the basis of Art. IV.[18] That article permits a receiving state to request delivery of a prisoner against whom a detainer is lodged, but the temporary custody thus obtained is, as with Art. III situations, only for the purpose of permitting prosecution on the charge or charges which form the basis of the detainers or arising out of the same transaction. Art. V(d). Thus, if the new offenses were not included within the detainer for purposes of Art. III, they could not be included for purposes of Art. IV.

We may assume, without deciding, that had appellant been sent back to Maryland, he would have been entitled to a hearing pursuant to Maryland's version of the Uniform Criminal Extradition Act, Md.Code Ann. Art. 41, § 2–210 (1990).[19] Contrary to a request under Art. III which requires that the prisoner waive his extradition rights, *see* note 16 *supra,* a prisoner's extradition rights are preserved when the receiving state requests custody under Art. IV of the IAD. *Cuyler v. Adams, supra* note 10, 449 U.S. at 450, 101 S.Ct. at 712.

■ Thus, the issue is the consequence of a failure to comply with the provisions of the IAD requiring a return to the sending state. If a prisoner is not brought to trial within the time limits designated in the IAD on charges subject to those time limits, its provisions specifically spell out the consequence: a dismissal of the charges with prejudice. Art. V(c). The same sanction is expressly provided for if a prisoner, having been brought to the receiving state pursuant to an Art. III request, is returned to the sending state without trial on any charges encompassed within the Art. III request. Art. III(d). No such sanction is provided for a violation of Art. V(d). We conclude that such a violation is cause for reversal only if it can be shown to have caused prejudice to appellant. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[20]

■ We are unable to perceive that appellant has suffered any prejudice through his conviction here on the five new counts without having been returned to Maryland, nor does appellant even now point to any prejudice that in fact ensued. It is undisputed that the government, had it delivered the appellant back to Maryland, could have forthwith sought his return to the District under a writ of habeas corpus *ad prosequendum,* as set forth above.

■ The principal prejudice that a prisoner might ordinarily suffer as a result of the failure to be returned to the sending state would appear to be his loss of any speedy trial rights that an Art. IV proce-

**18.** Also, it might possibly be argued that the writ of habeas corpus *ad prosequendum* could be operative with respect to the then uncharged offenses without any reliance on the IAD, and appellant's continued presence here was justified on that basis. We do not reach this issue since, even if the writ in this case has no such independent basis, appellant's convictions in the District must be affirmed for the other reasons set forth in this opinion.

**19.** In addition to the Extradition Act, under Art. IV of the IAD, a thirty-day waiting period is provided following the request "within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner." It appears to be unsettled whether, under the Supremacy Clause, any discretion exists in a state to refuse to comply with a writ issued by a District of Columbia court so empowered by Congress. *See United States v. Palmer, supra* note 3, 393 A.2d

at 146 n. 4; *United States v. Mauro, supra,* 436 U.S. at 363, 98 S.Ct. at 1848. However, no suggestion was made to the trial court or is made here that Maryland would have any grounds upon which to refuse to comply. *See* note 21 *infra.*

**20.** In *Cooney v. Fulcomer, supra,* 886 F.2d 41, the Third Circuit recognized the relevance of an investigation of the prejudice suffered by an appellant as a result of the failure to comply with Article V. The Pennsylvania state courts found no violation had in fact occurred, and the prisoner then sought relief in the federal courts through a writ of habeas corpus. The Third Circuit, noting the interpretation of the IAD to be a matter of federal law, disagreed with the Pennsylvania state courts, but, applying the standard used in habeas corpus petitions, found no "manifest injustice" to have been suffered by the appellant. Since we deal here with a direct appeal, we apply the *Kotteakos* test.

dure might provide him.[21] But no such concern is present here. Even if we assume that a prisoner who is held in a receiving state in violation of Art. V retains his speedy trial rights as if he were here involuntarily under an Art. IV request, here appellant pled guilty to the new counts within 120 days after he was brought into the District, and indeed within 120 days after the charges upon which he was tried became formal charges by the filing of an indictment. While it might be argued that if a prisoner's presence in the receiving state is a consequence of an Art. III request, he should be granted the benefit of the Art. III time limits if he is held in the receiving state in violation of Art. V, we think this presses the concept of Art. III rights too far in the face of a statutory scheme that makes no provision for such a sanction.

*Affirmed.*

---

**21.** The sending state does not have carte blanche to decide whether or not to comply with the request, even assuming an absence of Supremacy Clause problems. *See* note 19 *supra.* "[T]he primary purpose of a pre-transfer hearing is not to determine the guilt of the prisoner, but rather 'to assure that the prisoner transferred is the prisoner sought.' ... Appellant cannot claim that he was denied a full and fair opportunity to contest his transfer by the mere fact that it was a Pennsylvania judge rather than the Governor of New Jersey who made the determination." *Cooney v. Fulcomer, supra,* 886 F.2d at 45 (quoting from *Shack v. Attorney General of Pennsylvania,* 776 F.2d 1170, 1173–74 (3d Cir.1985), *cert. denied,* 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986)). Under the Uniform Criminal Extradition Act, the person being extradited has no right to challenge the facts surrounding the underlying crime or the lodging of the custody request at the hearing. Even at the later habeas corpus hearing, if any, he is permitted to question only such matters as whether the documents on their face are in order and whether he has been charged with a crime and is the person named in the request. *Cuyler v. Adams, supra* note 10, 449 U.S. at 443 n. 10, 101 S.Ct. at 708 n. 10.