**UNITED STATES, Appellant,**

v.

**Francis BAILEY, Appellee.**

No. 84-240.

District of Columbia Court of Appeals.
Argued Nov. 27, 1984.
Decided July 25, 1985.

Thomas Tourish, Jr., Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Steven D. Gordon and Natalia M. Combs, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Jennifer P. Lyman, Public Defender Service, Washington, D.C., with whom James Klein, Washington, D.C., was on the brief, for appellee.

Before FERREN, BELSON, and ROGERS, Associate Judges.

BELSON, Associate Judge:

The trial court dismissed an indictment charging appellee with second-degree burglary, D.C.Code § 22–1801(b) (1981), and grand larceny, *id.* § 22–2201, *repealed and superseded by id.* §§ 22–3811, –3812 (1984 Supp.), on the ground that appellee's rights under the Interstate Agreement on Detainers Act, 18 U.S.C.app. at 545–48 (1982); D.C.Code §§ 24–701–705 (1981), had been violated.[1] On appeal, the government argues that the IAD does not apply to detainers lodged against federal prisoners if they are based on violations of the District of Columbia Code prosecuted by the United States Attorney in the Superior Court of the District of Columbia. We affirm.

Appellee was convicted of interstate transportation of stolen property, 18 U.S.C. § 2314 (1982), in the United States District Court for the District of Arizona, and was incarcerated in the federal prison camp at Safford, Arizona. The United States Marshal lodged a detainer against appellee, dated March 30, 1983, based upon a warrant for his arrest for felonies allegedly committed in the District of Columbia. The detainer requested that the federal prison authorities notify the United States Marshal of the transfer or release of appellee. Apparently, the Safford prison officials failed to notify appellee of the existence of the detainer.[2] Shortly after appellee's transfer on June 14, 1983, to the federal prison camp in Tucson, Arizona, the prison officials there advised him of his right to request final disposition of the charges against him in the District of Columbia. The prison officials in Tucson sent the forms executed by appellee to the United States Marshal in Tucson, instead of

---

1. The Interstate Agreement on Detainers Act (Act) joins the United States and the District of Columbia as parties to the Interstate Agreement on Detainers (IAD). *United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1838, 56 L.Ed.2d 329 (1978); 18 U.S.C. app. § 2 at 545 (1982); D.C.Code § 24–701 (1981). The IAD, which contains nine articles is incorporated in full within the Act at 18 U.S.C. app. § 2 at 545–47, and at D.C.Code § 24–701. We shall refer to provisions of the IAD by their article numbers, as they are set forth in the IAD.

2. The IAD requires the official having custody of a prisoner to inform the prisoner promptly that a foreign jurisdiction has lodged a detainer against the prisoner. Article III(c).

directly to the appropriate prosecuting official and court as provided for by Article III(b) of the IAD.[3]

The United States Marshal Service, however, never forwarded these forms to the United States Attorney for the District of Columbia, the Superior Court of the District of Columbia, or any other official in the District.

Appellee was later brought to the District on a writ of habeas corpus *ad prosequendum,* issued by the Superior Court on the petition of the United States Attorney for the District of Columbia. Appellee arrived in the District on December 14, 1983, and was arraigned in Superior Court on December 21, 1983.[4] The judge continued the case for status hearing and trial. The trial court later granted appellee's motion to dismiss the indictment, ruling that: (1) appellee had invoked the IAD; (2) appellee was not brought to trial in the District within the 180-day time limit of Article III, and (3) the provisions of the IAD applied to prisoners such as appellee. On appeal, the government does not seek review of the first two findings; it contends only that the requirements of the IAD do not apply to appellee.

**3.** The prison officials mistakenly provided appellee with Speedy Trial Act forms instead of IAD forms. The Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982), does not apply to prosecutions in the Superior Court of the District of Columbia. *United States v. Alston,* 412 A.2d 351, 356 n. 10 (D.C.1980) (en banc).

**4.** The grand jury returned an indictment in the Superior Court on August 19, 1983. The clerk set the arraignment for August 23, 1983. On that date, however, the court continued the case to October 19, 1983, because appellee was imprisoned in Arizona. The docket entry concerning the court proceeding of that date reflects that the Assistant United States Attorney was to prepare a writ in order to secure appellee's presence. The court continued the case on two more occasions, each time with the understanding that the Assistant United States Attorney would prepare a writ. The Superior Court issued the writ in November 1983, and arraignment was set for December 20, 1983. The case was continued to December 21, 1983, because appellee was not brought up from jail on the 20th.

The IAD is an interstate compact entered into by the "United States on its own behalf and on behalf of the District of Columbia." 18 U.S.C. app. § 2 at 545 (1982); D.C.Code § 24–701 (1981). A detainer is a notice " 'filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978) (quoting H.R.REP. NO. 1018, 91st Cong., 2d Sess. 2 (1970); S.REP. NO. 1356, 91st Cong., 2d Sess. 2, *reprinted in* 1970 U.S.CODE CONG. & AD. NEWS 4864, 4865. Prior to the IAD, prisoners were not able to initiate legal proceedings to clear detainers based upon charges arising in jurisdictions other than the jurisdiction where they were incarcerated. H.R.REP. NO. 1018 at 2; S.REP. NO. 1356 at 2. The purpose of the IAD is "to encourage the expeditious disposition of such charges and to provide cooperative procedures among member States to facilitate such disposition." *Mauro,* 436 U.S. at 351, 98 S.Ct. at 1842.

Article III of the IAD provides that a prisoner may demand final disposition of the charges forming the basis of the detainer from a foreign jurisdiction.[5] The

**5.** Article III provides in part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: Provided, that, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which

official of the sending state having custody of the prisoner must notify the prisoner of the source and contents of any detainer lodged against him, and must inform the prisoner of his rights under the IAD.[6] Article III(c). If the prisoner wishes to invoke his rights under the IAD he must submit to the official having custody written notice of the place of his imprisonment and a request for a final disposition of the charges giving rise to the detainer. Article III(a), (b). The official shall deliver the prisoner's written notice and request for final disposition, along with a prison certificate, to the "prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction." *Id.* The prisoner must be brought to trial in the receiving state on the charges underlying the detainer within 180 days after the prisoner has caused to be delivered the request for trial disposition.[7] Article III(a). If the prisoner is not brought to trial within 180 days, the appropriate court of the receiving state shall

dismiss the indictment, information, or complaint upon which the detainer is based. Article V(c).[8] The court having jurisdiction may, however, grant any necessary or reasonable continuance for good cause shown.[9] Article III(a).

The government contends that the IAD does not apply to detainers lodged against federal prisoners for prosecutions by the United States Attorney in the Superior Court. The government observes that appellee was in the custody of the United States in Arizona; the detainer was filed by the United States Marshal; the United States Attorney sought appellee's presence in the District; and the United States Attorney was the prosecutor in the Superior Court. According to the government, the District's status as a "state" in the IAD is limited to those instances in which the detainer is based upon an offense prosecuted by the District of Columbia Corporation Counsel, rather than the United States At-

---

the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

6. The IAD defines a "Sending State" as:
   [A] State in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to article III hereof or at the time that a request for custody or availability is initiated pursuant to article IV hereof.
   Article II(b).

7. The IAD defines a "Receiving State" as:
   [T]he State in which trial is to be had on an indictment, information, or complaint pursuant to article III or article IV hereof.
   Article II(c).

8. Article V(c) provides:
   If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

9. Article IV of the IAD provides a procedure whereby the prosecutor who has lodged a detainer against a prisoner in another jurisdiction may obtain temporary custody of the prisoner for trial. Trial must be commenced within 120 days of the arrival of the prisoner in the receiving state, subject to continuance for good cause shown. Article IV(a), (c). Charges must be

torney for the District of Columbia.[10] Thus focusing on the identity of the prosecuting authority, the government argues that the IAD is simply inapplicable to the present detainer because the IAD does not apply to intra-jurisdictional detainers.[11]

■ The trial court, on the other hand, concluded that the language, purpose, and legislative history of the IAD establishes that it applies to detainers lodged against federal prisoners based upon any D.C.Code charge tried in the Superior Court. In the view of the trial court, a distinction grounded upon the identity of the prosecutor is contrary to the plain meaning and purpose of the IAD. We agree with that view, and affirm the dismissal of the indictment against appellee.

■ The first step in statutory construction requires us to read the language of the statute and construe its words according to their ordinary sense and plain meaning. *Peoples Drug Stores v. District of Colum-*

bia, 470 A.2d 751, 753–54 (D.C.1983) (en banc). The IAD defines a "state" as: "a State of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico." Article II(a). The plain meaning of this definition is that the District is a "state" distinct from the United States. Each jurisdiction in the definition is separated by semicolons. The language suggests no limitation based upon the identity of the prosecuting authority.

Other provisions of the Act indicate that it contemplates the District of Columbia and its court system as wholly distinct from the United States. The IAD requires each party state to designate an officer to promulgate rules and regulations and provide information to effectuate the IAD. Article VII. Congress designated the Attorney General of the United States as the officer for the United States, and, distinctly, the Mayor of the District of Columbia as

---

dismissed if trial is not commenced within the 120-day time period. Article IV(e), V(c).

**10.** The prosecuting authority for crimes committed in the District is bifurcated. The Corporation Counsel prosecutes only certain minor crimes, such as violations of municipal ordinances:

> (a) Prosecutions for violations of all police or municipal ordinances or regulations and for violations of all penal statutes in the nature of police or municipal regulations, where the maximum punishment is a fine only, or imprisonment not exceeding one year, shall be conducted in the name of the District of Columbia by the Corporation Counsel for the District of Columbia or his assistants, except as otherwise provided in such ordinance, regulation, or statute, or in this section.
>
> (b) Prosecutions for violations of section 6 of the Act of July 29, 1892 (D.C.Code, sec. 22–1107), relating to disorderly conduct, and for violations of section 9 of that Act (D.C. Code, sec. 22–1112), relating to lewd, indecent, or obscene acts, shall be conducted in the name of the District of Columbia by the Corporation Counsel or his assistants.

D.C.Code § 23–101(a), (b) (1981). The U.S. Attorney for the District of Columbia prosecutes most other criminal violations, including all felonies:

> (c) All other criminal prosecutions shall be conducted in the name of the United States by the United States attorney for the District of

Columbia or his assistants, except as otherwise provided by law.
*Id.* § 23–101(c).

**11.** For this argument to succeed, we must also accept the government's theory that intra-federal detainers are outside the scope of the IAD because the entire federal system is a single "state." Although some courts which have addressed this issue have held that all federal districts are one jurisdiction under the IAD, *United States v. Bruton,* 647 F.2d 818, 821 n. 1 (8th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981); *United States v. Krohn,* 558 F.2d 390, 392 (8th Cir.), *cert. denied,* 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977); *United States v. Cappucci,* 342 F.Supp. 790, 793 (E.D.Pa.1972), other courts have treated separate federal districts as distinct "states" under the IAD, *United States v. Bryant,* 612 F.2d 806, 810 (4th Cir.1979), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980); *cf. United States v. Woods,* 621 F.2d 844, 845–46 (6th Cir.,1980) (different federal districts not treated as single jurisdiction under the IAD when one federal district lodges detainer against state prisoner and another federal district secures prisoner's presence in that district by writ on unrelated charges), *cert. denied,* 449 U.S. 877, 101 S.Ct. 222, 66 L.Ed.2d 99 (1980). We need not reach this issue, however, in light of our holding that the detainer involved here was interjurisdictional.

the officer for the District. 18 U.S.C.app. § 6 at 548; D.C.Code § 24–704.[12] The enacting legislation defines "Governor," as used in the IAD, separately with respect to the United States—the Attorney General—and with respect to the District—the Mayor. 18 U.S.C.app. § 3 at 547; D.C.Code § 24–702(a). It also defines the term "appropriate court" discretely with respect to the United States—"the courts of the United States"—and the District—"the courts of the District of Columbia." 18 U.S.C.app. § 4 at 547; D.C.Code § 24–702(b). Thus, in the IAD and throughout the enacting legislation adopted by Congress, the United States and the District of Columbia are listed as distinct jurisdictions without limitation by reference to the prosecuting authority.

The government argues that there is a statutory focus upon the identity of the prosecuting officer, citing the language of Article III(a) to the effect that the IAD is invoked by the prisoner's request for final disposition addressed "to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction." We disagree, however, that Article III(a) stresses the role of the prosecutor above that of the "appropriate court." To the contrary, Congress defined the term "appropriate court" differently for the United States and the District, 18 U.S.C.app § 4 at 457; D.C.Code § 24–702(b), but did not define the term "prosecuting officer." This lends support to the interpretation that the identity of the "appropriate court" is central to the determination of when the IAD applies.

We thus conclude that the plain meaning of the IAD and the legislation that enacted it is that a detainer lodged against a federal prisoner with respect to charges to be tried in the Superior Court is a detainer from a "state" other than the United States, regardless of whether the prosecu-

tor is the U.S. Attorney or the Corporation Counsel.

The government, however, suggests that a review of the legislative history of the IAD will support its interpretation. We agree that even though the language of the IAD has a "superficial clarity," that should not end our inquiry, for "a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve." *Peoples Drug Stores,* 470 A.2d at 754.

The first formulation of what was to become the IAD was contained in a 1956 report of the Council on State Governments that recommended several uniform statutes to address the "difficulties inherent in the existing detainer system [that] affect judges, the institutional officials, the paroling authorities and the individual [prisoner] himself." COUNCIL OF STATE GOVERNMENTS, SUGGESTED STATE LEGISLATION PROGRAM FOR 1957 at 74 (1956) [hereinafter CSG SUGGESTED LEGISLATION]. Pertinent to our discussion, the report explained that "[a]t the present time, there is no means by which a prisoner may initiate proceedings to clear a detainer placed against him from another jurisdiction. This is equally true on an interstate and a federal-state basis." *Id.* at 78. The CSG SUGGESTED LEGISLATION defined a "state" as "a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico." *Id.* at 81.

Congressman Celler introduced an IAD bill in the House of Representatives based upon the draft CSG SUGGESTED LEGISLATION. H.R. 8365, 88th Cong., 1st Sess. (1963). No action was taken by Congress on the IAD until Congressman Celler reintroduced it in the 90th Congress. H.R. 15421, 90th Cong., 2d Sess. (1968). Section 2 of that

---

**12.** Originally, Congress designated the Commissioner of the District of Columbia as the officer for the District. The statutory language was changed to the Mayor of the District of Columbia after the District of Columbia Self-Govern-

ment and Governmental Reorganization Act abolished the Office of Commissioner in favor of the Office of the Mayor. *See* 18 U.S.C. app. note at 548 (Transfer of Functions); D.C.Code § 24–704 note on change in government.

bill declared that the IAD "is hereby enacted into law and entered into by the United States with all jurisdictions legally joining ..." *Id.* § 2. The definition of a "state" in the bill was identical to the definition in the CSG SUGGESTED LEGISLATION. *See id.* With respect to the United States, the bill defined the term "Governor" as the Attorney General, *id.* § 3, and "appropriate court" as the United States court in which detainers were pending. *Id.* § 4. The bill contained no definition of "Governor" or of "appropriate court" for the District of Columbia.

The House Committee on the Judiciary reported H.R. 15421 to the Committee of the Whole House, with "amendments ... proposed by the government of the District of Columbia." H.R.REP. NO. 1332, 90th Cong., 2d Sess. 1 (1968). The House Committee amended the IAD legislation to permit the District to join the Agreement. It added the District to the enacting clause: "the [IAD] is hereby enacted into law and entered into by the United States *on its own behalf and on behalf of the District of Columbia.*" H.R. 15421, 90th Cong., 2d Sess. (1968) (emphasis in original).[13]

The government argues that the legislative history of the amendments concerning the District demonstrates that the United States and the District are separate "states" under the IAD only when the detainer concerns charges prosecuted by the Corporation Council. We find some support for this argument in the House Committee Report. That report reprinted the letter of the Assistant to the Commissioner of the District. The Assistant observed that, in the absence of amendments to the IAD bill concerning the District, persons convicted of any crime occurring in the District (and therefore committed to the custody of the Attorney General of the United States), and persons to be tried for offenses against the United States (against whom the United States has lodged a detainer) and serving a prison term in a party state would be subject to the IAD. The Assistant also pointed out that, in the absence of amendments, persons yet to be tried for violations of a municipal regulation or ordinance (prosecuted by the Corporation Counsel) would not be subject to the IAD. *Id.* at 6–7.[14] Congress passed the IAD bill with the amendments concerning the District in the 91st Congress.[15]

---

**13.** The Committee made four other amendments to the bill providing "definitions and administrative provisions necessary to the entry into the agreement on the part of the District of Columbia." H.R.REP. NO. 1332, at 2. These amendments added the D.C. Commissioner to the definition of "Governor" in section 3, added the District of Columbia courts to the definition of "appropriate court" in section 4, and added the District to the administrative provisions in sections 5 and 6. *Id.* at 1.

**14.** The House Committee Report explained in pertinent part that:

The government of the District of Columbia has reported that unless the legislation is made applicable to the District there is no method available whereby a prisoner who is serving a term of imprisonment in one of the party States and against whom there is pending in the courts of the District of Columbia an information or complaint based upon a violation of a municipal regulation or ordinance, or an act of Congress in the nature of a municipal regulation or ordinance which is applicable solely within the District of Colum-

bia, may require the disposition of a detainer lodged against him. Furthermore unless the legislation is made applicable to the District, its prosecuting authorities would not be able to have a prisoner in a party State made available for disposition of local detainers. For these reasons the government of the District of Columbia recommended the amendments which the committee has adopted.

H.R.REP. NO. 1332, at 4.

**15.** Although the House passed H.R. 15421 on May 6, 1968, 114 CONG.REC. 11793–96 (1968), the Senate Committee on the Judiciary did not report the bill out in the 90th Congress 114 CONG. REC. 11980 (1968). Congressman Celler reintroduced the IAD in the House of Representatives in the 91st Congress as H.R. 6951. 115 CONG.REC. 3790–91 (1969). As the House Committee noted in its report on H.R. 6951, the bill was "identical with H.R. 15421, 90th Congress, as it passed the House." H.R.REP. NO. 1018, 91st Cong., 2d Sess. 1 (1970). The House Committee Report repeated its explanation of the concerns of the District of Columbia. *Id.* at 4; *see also* S.REP. No. 1356, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. CODE CONG. & AD.NEWS 4864, 4866–67. The

The reported comments of the Assistant to the Commissioner thus reflect the underlying assumption that persons prosecuted by the United States Attorney in the local court for violations of the D.C.Code would be subject to the IAD without the amendments concerning the District. This supports the government's argument that Congress amended the proposed IAD to encompass cases prosecuted by the Corporation Counsel, rather than to cover cases like appellee's.

On the other hand, the remarks by two Congressmen reflect a more expansive view on the reason for the need to amend the IAD bill concerning the District. The floor manager of the bill, Congressman Kastenmeier, explained in 1968 that:

> Participation by the District of Columbia is necessary in order to make the agreement applicable to the clearing of detainers against State prisoners where the detainers are based on alleged violations of municipal regulations, ordinances, *or acts of Congress applicable solely within the District.*

114 CONG.REC. 11795 (1968) (emphasis added). Congressman Kastenmeier repeated that statement again in 1970. 116 CONG. REC. 13999. Comments of the floor manager are "accorded the same weight as formal committee reports." 2A SUTHERLAND STATUTORY CONSTRUCTION § 48.14 at 335 (4th ed. 1984).

Congressman Poff also spoke on behalf of the bill in 1970, and affirmed Congressman Kastenmeier's observation that the District would be a party whenever the charges are based on statutes applicable solely to the District:

House passed H.R. 6951 without further amendment on May 4, 1970. 116 CONG.REC. 13997–14000 (1970). The Senate passed the identical bill on November 25, 1970. 116 CONG.REC. 38840–42 (1970). The bill became law on December 9, 1970. Interstate Agreement on Detainers Act, Pub.L. No. 91–538, 84 Stat. 1397 (1970).

**16.** Another purpose of the IAD is the development of a cooperative system whereby prosecutors may secure the presence for trial of a

[The bill] would make the District of Columbia a party "State" with respect to violations of the District's municipal regulations and ordinances and of Federal statutes limited in their application to the District. The United States would become a party to the agreement with respect to Federal criminal laws of general application.

116 CONG.REC. 14000 (1970).

Thus, in discussing the amendments concerning the District's participation in the IAD, these Congressmen related the need for such participation not only to cases arising under municipal regulations and ordinances prosecuted by the Corporation Counsel, but also to acts of Congress applicable solely within the District prosecuted generally by the United States Attorney.

This ambiguous and conflicting legislative history provides no "persuasive reasons" for departure from the plain meaning of the IAD definition that the District is a distinct "state" for all offenses tried in its courts. *See Peoples Drug Stores,* 470 A.2d at 755.

Most significant, the legislative purpose of the IAD is best served by appellee's interpretation. The IAD is to be "liberally construed so as to effectuate its purposes." Article IX. A major purpose of the IAD is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Article I.[16] Outstanding detainers often interfere with a prisoner's rehabilitation. *Dobson v. United States,* 449 A.2d 1082, 1086 (D.C. 1982), *cert. denied,* —— U.S. ——, 104 S.Ct.

prisoner incarcerated in another jurisdiction. CSG SUGGESTED LEGISLATION at 78. Although the prosecutors in the United States courts and the Superior Court perhaps gained less from joining the IAD on this ground because these courts have an alternative means of obtaining prisoners—the writ of habeas corpus *ad prosequendum*—the Supreme Court held that the United States entered the agreement as both a "sending" and a "receiving" "state." *United States v. Mauro,* 436 U.S. 340, 354–56, 98 S.Ct. 1834, 1844–45, 56 L.Ed.2d 329 (1978).

109, 78 L.Ed.2d 111 (1983). The government's construction would leave an entire class of federal prisoners, including appellee Bailey, with no satisfactory means of effecting the final disposition of detainers based on serious alleged violations of the D.C.Code. This would occur whenever the United States Attorney, who prosecutes all felonies and other serious criminal offenses in Superior Court, should lodge against a person committed to a federal prison a detainer based on an alleged violation of a statute applicable only in the District of Columbia.[17] Without a clear indication of such a Congressional intent from the language of the IAD or the legislative history, we decline to exclude that class of prisoners from the protections of the IAD.

We therefore hold that detainers filed against federal prisoners arising out of alleged violations of the D.C.Code to be prosecuted in the Superior Court of the District of Columbia are subject to the requirements of the IAD regardless of whether the prosecutor is the United States Attorney or the District of Columbia Corporation Counsel.

*Affirmed.*

17. The excluded class would also include persons convicted in Superior Court of charges prosecuted by the United States Attorney who seek final disposition of charges pending against them in United States District Courts. Such persons, however, have the benefit of the Speedy Trial Act. 18 U.S.C. §§ 3161–3174 (1982).