**Anthony W. GRANT, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 97–CF–866, 00–CO–
1655, 01–CO–364.

District of Columbia Court of Appeals.

Argued Feb. 12, 2004.
Decided Sept. 2, 2004.

Richard K. Gilbert, Washington, DC, appointed by the court, for appellant.

Robert J. Feitel, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and FERREN, Senior Judge.

RUIZ, Associate Judge:

A jury convicted Anthony W. Grant in 1996 of possession with intent to distribute cocaine. *See* D.C.Code § 33–541(a)(1) (1981), *re-codified* at D.C.Code § 48–904.01(a)(1) (2001). He asks us to reverse his conviction and dismiss the charge with prejudice on the ground that his statutory right to a speedy trial under the Interstate Agreement on Detainers was violated. *See* D.C.Code § 24–701 (1991), *re-codified* at D.C.Code § 24–801 (2001). After studying the record, we conclude that the agreement does not apply to the trial of the particular charge at issue in this appeal. The judgment of conviction accordingly stands affirmed. We emphasize, however, the responsibilities of the Superior Court and the prosecuting authorities, including the United States Attorney and the Attorney General for the District of Columbia, when acting on a detainer lodged on a charge brought in the courts of the District of Columbia.

### I.

We begin with a brief overview of the controlling law. The Interstate Agreement on Detainers ("IAD") is an interstate compact signed by the United States on its own behalf and on behalf of

the District of Columbia.[1] *See* Interstate Agreement on Detainers Act, Pub.L. No. 91–538, 84 Stat. 1397 (1970), *codified* at 18 U.S.C. app. § 2 (1994); D.C.Code § 24–701, *re-codified* at D.C.Code § 24–801; *see also* D.C.Code § 23–101(c) (1989) (providing with exceptions not relevant here that criminal prosecutions in the District of Columbia shall be conducted in the name of the United States by the United States Attorney for the District of Columbia). Because the IAD is a congressionally-approved interstate compact, it is a federal law subject to federal construction. *See Cuyler v. Adams*, 449 U.S. 433, 441, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The United States Supreme Court's interpretations of the IAD are thus binding upon state courts. As its name suggests, the compact concerns detainers, which are documents "filed with [an] institution in which a prisoner is serving a sentence, advising that [the prisoner] is wanted to face pending criminal charges in another jurisdiction." *United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)(quoting H.R. REP. No. 91–1018, at 2 (1970); S. REP. No. 91–1356, 91st Cong. 2nd. Sess. 1970 at 2 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News at 4864, 4865). More specifically, a detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency [after his release] or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Use of such notices predates the existence of the IAD. Indeed, it was the deleterious side effects of lodging detainers without instituting prosecution that created the need for an interstate compact. Before the IAD came into being, prisoners could not readily initiate legal proceedings to resolve detainers based upon charges arising outside the jurisdiction of their incarceration. *See United States v. Bailey*, 495 A.2d 756, 758 (D.C.1985) (citing H.R. REP. No. 91–1018, at 2 (1970); S. REP. No. 91–1356, at 2 (1970)). This impotence proved unacceptable for a number of reasons. "[C]harges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints[,] and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." D.C.Code § 24–701 art. I. In addition to the negative impact they may have on a prisoner's ability to secure and participate in rehabilitation programs, unresolved detainers adversely influence a prisoner's classification as a maximum or close custody risk, as well as his or her eligibility for work assignments, preferred living accommodations, work release programs, and parole. *See Carchman*, 473 U.S. at 730 n. 8, 105 S.Ct. 3401. To ameliorate these side effects, the IAD encourages expeditious disposition of charges and establishes cooperative procedures among party States. *See* D.C.Code § 24–701 art. I (stating that it is the party States' policy to encourage orderly disposition of charges and determination of the proper status of all detainers based on untried indictments, informations, or complaints).

The IAD's purpose is achieved through "two alternate and distinct mechanisms by which a prisoner against whom a detainer has been filed can be transferred to a second jurisdiction for expedited disposition of the outstanding charges." *Felix v. United States*, 508 A.2d 101, 104 (D.C. 1986). First, the IAD authorizes a prisoner to file a request for final disposition of

---

1. For a full history of the IAD's development and enactment, *see United States v. Mauro*, 436 U.S. 340, 350–51, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

outstanding charges related to a detainer, after which request the prisoner must be brought to trial in the receiving jurisdiction within one hundred and eighty days from the date the request was made unless the court grants a continuance for "good cause." *See* D.C.Code § 24–701 art. III(a) (stating that upon demonstration of good cause made in open court and in the presence of the prisoner or counsel, the court having jurisdiction may grant "any necessary or reasonable" continuance). The second procedure established by the IAD allows a prosecutor to initiate final disposition of the charges connected with a detainer by filing with the state penal institution where the defendant is incarcerated a request for a transfer of custody to the jurisdiction where the charges are pending. In such a case, the prisoner must be brought to trial within one hundred and twenty days of his or her physical arrival in the receiving jurisdiction, again subject to any necessary or reasonable continuance granted by the court for good cause.[2] *See* D.C.Code § 24–701 art. IV(c). As the text of Article IV(a) makes clear, two procedural prerequisites must be satisfied before a prosecutor may secure temporary custody over a prisoner for disposition of outstanding charges, namely, the filing of both a detainer and a written request for temporary custody with the officials of the foreign State penal institution. *See* D.C.Code § 24–701 art. IV(a). Under this regime, inmates "can force the expeditious

disposition of outstanding detainers and their underlying charges[,] ... prosecutors can more easily obtain prisoners for trial[, and] judges and prison and parole authorities can more rationally administer punishment and rehabilitation." *United States v. Ford,* 550 F.2d 732, 741 (2d Cir.1977), *aff'd sub nom. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329.

In order to motivate compliance with Articles III and IV, the IAD furnishes its own sanction for the failure to try charges in a timely manner. Article V(c) provides that

[i]f the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the case with prejudice, and any detainer based thereon shall cease to be of any force or effect.

D.C.Code § 24–701 art. V(c); *see also* 18 U.S.C. app. § 2 art. V(c). Although not universally agreed upon, this court, consistent with Article V(c)'s plain language, has not required a demonstration of prejudice before an inmate defendant may prevail in seeking to dismiss pending charges that

---

2. In this appeal, we are concerned exclusively with the government-initiated procedure established in Article IV(a), which states in full:

The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in

which the prisoner is incarcerated; provided, that the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request; and provided further, that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

have not been timely brought for trial. *See Haigler v. United States*, 531 A.2d 1236, 1240 n. 5 (D.C.1987) ("A requirement of prejudice is found neither in the [IAD] nor in its interpretations.") (citing *Mauro*, 436 U.S. at 364–65, 98 S.Ct. 1834 (dismissal for violation of timely trial provision granted without examining whether defendant was prejudiced by delay)). *But see, e.g., Nelms v. State*, 532 S.W.2d 923, 927 (Tenn.1976) (holding that dismissal of charges is not automatically required for violations of time limits in Article III or IV because of the separate language in the IAD that states that if "good cause" is shown the court may grant any necessary or reasonable continuance of trial); *State v. Angelone*, 67 Wash.App. 555, 837 P.2d 656, 660 (1992) (applying a case-by-case approach where the court examines bad faith of the prosecutor and prejudice to the defendant in determining whether dismissal is appropriate).[3]

Also important to a complete understanding of this case is the relationship between a detainer and a writ of habeas corpus *ad prosequendum*. The latter instrument is a writ commanding the immediate removal of a prisoner from incarceration so that he or she may be transferred into the jurisdiction from which the writ issued to stand trial on charges for crimes committed within that jurisdiction. *See Carbo v. United States*, 364 U.S. 611, 615, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). "Since the time of *Ex parte Bollman*, [8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807)], the statutory authority of federal courts to issue writs of habeas corpus *ad prosequendum* to secure the presence, for purposes of trial, of defendants in federal criminal cases, including defendants then in state custody, has never been doubted." *Mauro*, 436 U.S. at 357–58, 98 S.Ct. 1834. As a creation of Congress, the Superior Court of the District of Columbia has the authority under the All Writs Act, 28 U.S.C. § 1651 (1994), to issue *ad prosequendum* writs. *See United States v. Palmer*, 393 A.2d 143, 146 (D.C.1978). The availability of the writ to secure a prisoner's presence at trial in the federal and D.C. judiciaries persists, moreover, undiminished by the IAD. *See Mauro*, 436 U.S. at 358, 98 S.Ct. 1834 ("The role and functioning of the *ad prosequendum* writ are rooted in history, and they bear little resemblance to the typical detainer which activates the provisions of the IAD."). This does not mean, however, that these independent regimes never intermingle. The Supreme Court has determined that while a writ of habeas corpus *ad prosequendum* is not a detainer triggering the protections of the IAD, it may nonetheless serve as a request for temporary custody under Article IV(a) in those cases in which a detainer already has been filed. *See Mauro*, 436 U.S. at 361–62, 98 S.Ct. 1834.

With this overview of the legal framework in place, we now recount the history of the events that transpired below.

---

**3.** Although Article V(c) applies equally to the United States, a "special provision" separately enacted by Congress overrides the dismissal clause when the United States is the receiving jurisdiction. When the United States does not timely try charges underlying a detainer, the dismissal may be with or without prejudice. *See* 18 U.S.C. app. § 9(1) (1994) ("Special Provisions when United States is a Receiving State") (stating that when the United States is the receiving jurisdiction, "the court shall consider [in determining whether to dismiss the case with or without prejudice], among others, each of the following factors: [t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice"). This special provision does not appear in the D.C.Code provisions codifying the agreement and, by its own terms, does not apply when the District of Columbia, or any jurisdiction other than the United States, is the receiving jurisdiction.

## II.

On August 1, 1991, an officer with the Metropolitan Police Department working in an elevated observation post in the 1500 block of Columbia Road observed Grant engage in two separate transactions with passersby in which he was handed money in exchange for a small object that he retrieved from a paper bag lying along a public walkway. The white, rock-like contents of the bag tested positive for cocaine at the scene. Grant was arrested straight-away. On August 14, 1991, the United States Attorney for the District of Columbia filed a grand jury indictment charging Grant with one count of possession with intent to distribute cocaine. The action was placed on the Superior Court Criminal Division's docket as case number F–8984–91. Eleven days later, on September 25, Grant was separately indicted in case number F–10939–91 on one count of possession with intent to distribute cocaine and one count of distribution of cocaine. Because this appeal is from the conviction of the possession with intent to distribute case, number F–8984–91, the record does not reveal the factual basis for the separately indicted charges in case number F–10939–91.

Grant appeared in the Superior Court for arraignment in the instant case on September 16, 1991, but he did not show for any of his subsequent trial dates.[4] The record indicates that at the time he was scheduled to appear, Grant was serving a term of imprisonment at the Mid–State Correctional Facility in Marcy, New York. Upon learning this fact, the government apparently instructed the United States Marshal's Service for the Northern District of New York to lodge a detainer with the prison's superintendent. The Mar-

shal's Service did so on December 28, 1994, utilizing Form USM–16 (Rev. 8/23/77), which is headed "Detainer," and in the caption indicates only that it was based on a "Federal Warrant: Failure to Appear." The body of the detainer form does not elaborate on the type of charges nor where they were pending against Grant. Despite the lack of detail, the government avers that the detainer was filed exclusively in relation to case number F–10939–91, in which Grant would ultimately plead guilty, and did not embrace the charges that form the basis of the instant case. The prison superintendent's acknowledgment letter confirms this claim, stating that the prison had received a detainer in "Criminal No. F10939–91." In any event, Grant does not dispute that the detainer exclusively concerned case number F–10939–91, and we accordingly construe the detainer as the parties suggest despite its facial vagueness. As to the information that the detainer actually did supply, Form USM–16 speaks exclusively to the notice provisions of the Speedy Trial Act of 1974, which applies only to outstanding federal charges and not pending state counts. See United States v. Alston, 412 A.2d 351, 356 n. 10 (D.C.1980) (en banc). The detainer—which, according to its own terms, was to be forwarded to Grant—noted, quite correctly on the established facts of record, that Grant had no rights under the Speedy Trial Act. It did not, however, make any reference to the rights afforded to him under the IAD.

Nearly one year later, on October 13, 1995, the government obtained a writ of habeas corpus ad prosequendum in order to bring Grant to the District of Columbia to face the charge filed in the instant case, number F–8984–91. The writ appears no-

---

4. After appellant's failure to appear for trial, the only remaining information available to us regarding the course of events in case number F–10939–91 comes through the gov-

ernment's brief, which indicates that Grant pled guilty to both counts of possession with intent to distribute and distribution.

where in the record, but a handwritten note taken by the trial court during a status hearing on November 11 indicates that "[defendant] writted in; serving sentence in N.Y." A little more than one month after the writ had been issued, Grant was transferred to the District of Columbia on November 21. In order to accommodate defense counsel's schedule, the proceedings were continued until November 28, at which time trial on the instant charge was scheduled for April 8, 1996, with the agreement of the parties and the court.[5] On March 11, 1996, Grant filed a speedy trial demand, citing the Sixth Amendment to the United States Constitution and the IAD.[6] Assuming that the IAD applies, Grant's trial would have had to commence on or before March 27, 1996, which was one hundred and twenty days after his arrival into the territory of the District of Columbia plus proper allowances for delays attributable to the defense. *See* D.C.Code § 24–701 art. IV(c). On March 25, Grant filed a motion to dismiss the indictment on the ground that his speedy trial rights under Article IV of the IAD had been violated. The trial court denied the motion, adopting the government's position that Grant had waived his rights under the IAD by failing to object, and, in fact, affirmatively agreeing, to a trial date beyond the one hundred and twenty day limitation. Thereafter, Grant was convicted and sentenced to a term of four to twelve years of imprisonment.[7]

5. The transcript reveals the following exchange:

> [Court]: It appears that Mr. Grant has had an outstanding warrant since 1992?
>
> [Defense Counsel]: I believe—Your Honor, can I ask which case number you're looking at?
>
> [Court]: F–8984–91.
>
> [Defense Counsel]: I believe the warrant was issued January 24, 1992.
>
> [Court]: Was he arrested on this warrant, only, or in connection with new matter?
>
> [Defense Counsel]: Your Honor, what I was told by your law clerk yesterday over the telephone was that he was writted in. That he had been incarcerated elsewhere and was writted in. He was brought in from another institution.
>
> [Court]: From where? Do you have that information?
>
> [Defense Counsel]: He's serving a sentence, currently, from New York.
>
> [Court]: Okay. Who is the Prosecutor in this matter? It used to be Mr. Bunnell.
>
> [Government]: [That will be] Ms. Diane Harris Epps, Your Honor.
>
> [Court]: Would you like a trial date, here?
>
> [Government]: Yes. I think that's—
>
> [Court]: What is Ms. Epps's next date?
>
> [Government]: Her next available date, Your Honor, is April 8th, 11th, 12th, and any date throughout April.
>
> [Defense Counsel]: The 8th is good for me, if that's good for the Court.
>
> [Court]: That's fine. Mr. Grant's matter is on the calendar for April 8th.

6. We are not asked to consider the Sixth Amendment in this appeal.

7. Grant filed a post-conviction motion under D.C.Code § 23–110 seeking to vacate the conviction and sentence on the same ground that he now presses as a basis for reversal on direct appeal. In the post-conviction motion Grant additionally claimed that (1) to the extent that his counsel did not have knowledge of his rights under the IAD, or that she may be deemed to have waived those rights despite her lack of knowledge, she was constitutionally ineffective, and (2) counsel was constitutionally ineffective in failing to request an alibi instruction. The trial court divided its consideration of the claims arising under the IAD and those arising under the Constitution and then denied the motion in two parts. In his brief, Grant abandoned his appeal from the denial of the ineffectiveness claims, expressly stating, "[h]e does *not* raise any claim with respect to the conduct of the trial itself or that portion of his Motion to Vacate which concerned [defense counsel's] effectiveness at trial." Although he later attempts to "reserve the right to contend" in a proceeding on remand that his counsel was ineffective should the government's present arguments or this court's disposition make the issue unavoidable, he has, consistent with his express promise, not made any argument in this regard and his ineffectiveness claims are therefore abandoned. *See* D.C.App. R. 28(a)(5); *Bardoff v. United States,* 628 A.2d 86, 90 n. 8

## III.

 Having relied in the trial court exclusively on the contention that Grant had waived the IAD's protections, the government argues for the first time on appeal that the IAD does not apply to the present case because the detainer to which Grant points as the trigger for the IAD's activation was filed in case number F–10939–91, which is distinct from the instant prosecution in which Grant's presence in the District of Columbia was secured solely by operation of the *ad prosequendum* writ. Recognizing its failure to argue the IAD's inapplicability in the trial court, the government urges us to exercise our authority to affirm the denial of the motion to dismiss on grounds different than those relied upon by the trial court. *See Alston v. United States,* 518 A.2d 439, 440 n. 2 (D.C. 1986) (noting that an appellate court may affirm a decision for reasons other than those given by the trial court). Appellant responds by arguing that the government has waived this argument on appeal by failing to raise it in the trial court, and in any event, the argument should be rejected because its acceptance by this court would countenance the United States Attorney's purportedly unparalleled ability as the principal prosecutorial authority in the District of Columbia to use a writ available only to the federal and D.C. courts so as to circumvent the IAD's protections.[8] Considering both the Superior Court's power to issue *ad prosequendum* writs with a national reach and the provisions and purpose of the IAD, this court

has a strong interest in clearly defining the operation of such writs in relation to the IAD for the benefit of prisoner defendants and the government alike. As the issue is a matter of law that we would review *de novo* even if it had been raised before the trial court, we accordingly consider the merits of the government's contention that the IAD does not apply in this case.

Grant characterizes the government's position on appeal as meaning that "lodging a detainer in one case and obtaining a writ in another takes both cases outside the purview of the [IAD]." He urges us to reject this contention because our acceptance would encourage the United States Attorney's office to "manipulate" the system by routinely bifurcating its use of a detainer and a writ where more than one charge is pending so as to defeat the protections of the IAD as to every charge. According to Grant, "by manipulating the writ of habeas corpus *ad prosequendum* so as to obtain it [the writ] in the case in which a detainer was *not* lodged, it can avoid extending Appellant rights in either case under Article IV or V." We see the issue differently. Despite Grant's characterization, the government does not contend before this court that Grant is not entitled to the protections of the IAD in case number F–10939–91 because the charges underlying the detainer filed in that case do not, as Grant puts it, "match" the charges underlying the *ad prosequendum* writ filed in this case. Given that this appeal does not concern case number F–10939–91, any such argument by the government would have been misplaced.[9]

(D.C.1993) (citing *Cratty v. United States,* 82 U.S.App. D.C. 236, 243, 163 F.2d 844, 851 (1947) (questions raised but not argued in briefing are treated as abandoned)).

**8.** We note that the same argument may be leveled against prosecutions brought in the Superior Court by the Attorney General for the District of Columbia.

**9.** Thus, we reserve for another day the question of whether an *ad prosequendum* writ, based on charges different than those which formed the basis of both the detainer and the conviction, may function in relation to that detainer as the requisite request for temporary custody sufficient to trigger the protections afforded under Article IV of the IAD. *See Mauro,* 436 U.S. at 349, 98 S.Ct. 1834 (holding that an *ad prosequendum* writ is a request

The government's position in this case, as we understand it, is much narrower. It argues that when an inmate defendant is brought into the District of Columbia and prosecuted *solely* by means of a writ of habeas corpus *ad prosequendum*, the IAD does not apply to the charges prosecuted pursuant to the writ even though other, separate charges underlying a detainer are subject to the IAD. We conclude that the government's contention is a correct statement of the law.

■ Although the present issue is novel, the court's discussion in *Parker v. United States*, 590 A.2d 504 (D.C.), *cert. denied*, 502 U.S. 973, 112 S.Ct. 451, 116 L.Ed.2d 469 (1991), is instructive. A detainer was lodged against Parker on the basis of a two-count complaint. He requested a speedy trial under Article III of the IAD and was delivered to the District of Columbia. While he was awaiting trial, the original two-count complaint was dismissed with prejudice because he had not been brought to trial within the IAD's one hundred and eighty day time limit. *See id.* at 505. While Parker was still here, he was indicted on five counts—two related to the robbery charged in the complaint on the basis of which the detainer was lodged and an additional three counts which concerned unrelated robberies. *See id.* at 506. Parker then moved to dismiss the five counts because the government again failed to try him within the period required by the IAD. We affirmed the trial court's dismissal of only the two counts that had appeared in the original complaint, holding that the IAD applied only to complaints which formed the basis of the detainer. *See id.* at 507–08. Although *Parker* in-

volved a defendant's Article III request for disposition, the reasoning with respect to the IAD's universally applicable dismissal provision is relevant here:

Art. V(c) provides that "in the event that an action on the indictment, information, or complaint *on the basis of which the detainer has been lodged* is not brought to trial within the ... period provided in Article III [or Article IV]," that indictment, information, or complaint must be dismissed with prejudice, "and any detainer based thereon shall cease to be of any force or effect."

...

Thus, these provisions focus on the problem of detainers. *By their terms, they deal only with indictments, informations, or complaints on the basis of which detainers have been filed.*

*Id.* at 507 (emphasis added). The plain language of Article V(c) is inescapable. Only those charges "on the basis of which the detainer has been lodged" that are not tried within the prescribed time limit are subject to dismissal. D.C.Code § 24–701 art. V(c); *see also Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that [it] has used.") (citation omitted). The dismissal remedy that Grant seeks is not available to him because, as he concedes, the charge upon which he was tried did not form the basis of the detainer, and he does not contend that the charges "arose out of the same transaction." *See* D.C.Code § 24–701 art. V(d) (explaining that the temporary custo-

---

for temporary custody, but doing so on facts that indicated the writ was based on the same charges that supported the detainer and conviction). Stated differently in the concrete facts of this case, we do not presently decide whether the IAD's protections would have been triggered as to the charges underlying

the detainer by operation of the *ad prosequendum* writ had Grant actually been untimely tried on those charges. This question would have been presented for review had case number F–10939–91 been appealed, but it is clearly beyond our jurisdiction to resolve it in this appeal.

dy contemplated by the IAD exists for the purpose of prosecuting charges that form the basis of a detainer or "any other charge or charges arising out of the same transaction"). In our view, charges unrelated to those in the indictment, information, or complaint underlying the detainer are not subject to the IAD's speedy trial provisions.[10]

We are persuaded by the reasoning in *People v. Greenwald*, 704 P.2d 312 (Colo. 1985), in which the Supreme Court of Colorado derived the same holding on facts similar to those present here. In *Greenwald*, the state of Colorado filed an information in February 1981 charging Greenwald with theft. Thereafter, in September 1981, a separate information was filed alleging an unrelated theft offense. On October 14, 1981, yet a third information was filed by a deputy district attorney in a separate county in Colorado charging Greenwald with another unrelated offense of theft and second-degree forgery. *See id.* at 314. On May 21, 1982, Greenwald was sentenced to a term of imprisonment to be served in the Oregon State Correctional Institution. On June 9, 1982, the Colorado deputy district attorney who filed the first two informations sent a detainer and request for temporary custody to the Oregon institution. *See id.* Upon learning that Greenwald had been returned to Colorado, the district attorney who filed the third information sought and obtained a state-authorized writ of habeas corpus *ad prosequendum* to secure Greenwald's presence in the local county court.[11] *See id.* The trial judge ruled that the IAD applied to the charges pending against Greenwald in the third information and dismissed the charges for the state's failure to comply with the speedy trial provisions. *See id.* at 315. The Colorado Supreme Court reversed, finding no basis to subject the unrelated charges contained in the third information, which had been prosecuted pursuant to the writ *ad prosequendum*, to the requirements of the IAD simply because they already had been formally filed by the state and were pending at the time the detainer was lodged. *See id.* at 316. The court reasoned that

> the language of article IV(c), requiring trial within 120 days "in respect of any proceeding made possible by this arti-

---

**10.** The Supreme Court has not decided whether, to be covered by the time periods required by Articles III and IV and subject to the mandatory dismissal of Article V(c) if the charges are not timely prosecuted, there must be a strict identity between the charge contained in the indictment, information, or complaint on the basis of which a detainer is lodged and the charge on which the defendant is tried and convicted, or whether a "related" charge will also be subject to the IAD's provisions. The lower federal courts and state courts appear to be split on the issue. *Compare United States v. Sanders*, 669 F.2d 609, 610 (9th Cir.1982) (holding, without discussion, that where a one-count complaint, upon which the detainer was based, was dismissed for failure to comply with the prescribed time period and a new complaint was filed containing the dismissed count and two new but related counts, the trial court properly dismissed only the original count) *and Espi-*

*noza v. State*, 949 S.W.2d 10, 12 (Tex.App. 1997) (noting that "[b]y its terms, [the IAD] limits dismissal to a charge forming the basis of the detainer" and holding that conviction, even though on a related charge, was not on the charge on which the detainer was lodged), *with Commonwealth v. Boyd*, 451 Pa.Super. 404, 679 A.2d 1284, 1287 (1996) (holding that speedy trial provisions of IAD did not apply where charges for which detainer was lodged were "separate and apart" from new charges that were subject of conviction) *and People v. Greenwald*, 704 P.2d 312 (Colo.1985). *See also Parker*, 590 A.2d at 508 n. 15. (reserving decision on the possible applicability of the IAD to other charges pending when the detainer is lodged).

**11.** We see no legal significance to the disparate reach of the intra-state writ issued in *Greenwald* and the national writ issued by the trial court in this case.

cle," ... relate[s] only to the charges underlying the detainer which made the proceedings possible. Such conclusion is supported by the language of article IV(b), recognizing that separate detainers may be filed against a prisoner by officials of a foreign jurisdiction. Therefore, we conclude that the [charges contained in the third information] were not subject to the 120–day requirement of article IV(c) because those charges did not underlie a detainer previously lodged against the defendant.

This construction also accords with one of the purposes of the IAD. The IAD is designed in part to benefit states agreeing to accept its provisions by expediting the difficult process of disposing of criminal charges pending against persons who are no longer in the jurisdiction of the forum. In view of the language of this article and this purpose of the IAD, we construe article IV(c) as referring to proceedings relating to the charges upon which the detainer activating the provisions of the IAD was based. *Id.* (internal citations omitted). The Colorado Supreme Court reaffirmed its holding in *Greenwald* by applying the same rationale to an "analytically identical" situation arising under Article III of the IAD. *See People v. Newton,* 764 P.2d 1182, 1189–90 (Colo.1988) (en banc); *see also State v. Wells,* 94 Ohio App.3d 48, 640 N.E.2d 217, 223 (1994) (applying *Newton* and holding that the IAD "relates only to charges contained in the indictment, information, or complaint which served as the basis for the detainer").

 This construction of the IAD comports, moreover, with the Supreme Court's clear pronouncement that the writ of habeas corpus *ad prosequendum* retains its independent vitality as a means of securing the custody of an inmate in another jurisdiction even in the wake of the more recently enacted IAD. The government

"need not proceed by way of the [IAD]. It may obtain a state prisoner by means of an *ad prosequendum* writ without ever filing a detainer; in such a case, the IAD is inapplicable." *Mauro,* 436 U.S. at 364 n. 30, 98 S.Ct. 1834. We hold today that the government in point of fact does not proceed by way of the IAD when it demonstrably obtains custody over an inmate defendant solely through an *ad prosequendum* writ despite the existence of lodged detainers in other, unrelated cases.

Appellant cites to *Mauro* for the proposition that once a detainer is filed against a prisoner, any writ of habeas corpus *ad prosequendum* must be treated as a request for temporary custody under the IAD regardless of the identity (or, rather, absence of identity) between the charges underlying each document. In *Mauro,* the Supreme Court stated that

[o]nce the Federal Government lodges a detainer against a prisoner with state prison officials, the [IAD] by its express terms becomes applicable and the United States must comply with its provisions. And once a detainer has been lodged, the United States has precipitated the very problems with which the IAD is concerned. Because at that point the policies underlying the IAD are fully implicated, we see no reason to give an unduly restrictive meaning to the term "written request for temporary custody."

436 U.S. at 361–62, 98 S.Ct. 1834. This language, however, cannot be molded to support appellant's argument because in that case there was a single indictment, detainer, and writ all addressed to the same alleged bank robbery. *See id.* at 346, 98 S.Ct. 1834. The Court implicitly recognized that the writ present in that case was predicated on the same charges underlying the detainer when it stated that "[t]he fact that the prisoner is brought

before the district court by means of a writ of habeas corpus *ad prosequendum* in no way reduces the need for this prompt disposition *of the charges underlying the detainer." Id.* at 362, 98 S.Ct. 1834 (emphasis added). Given that the Court affirmed the independent vitality of the writ elsewhere in *Mauro,* this passage can only be interpreted to mean that the particular writ at issue in that case was based on the charges that had underlain the detainer. The fact that an *ad prosequendum* writ may qualify as a request for temporary custody when it is based on the charges giving rise to the detainer does not establish that every writ issued after a detainer has been lodged is necessarily subsumed into the detainer and subjects the subsequent prosecution to the IAD even though it is not related to the charges underlying the detainer. *Cf.* D.C.Code § 24–701 art. III(d) (providing, without an analog in Article IV, that a prisoner's request for final disposition of charges underlying a detainer under Article III "shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed"). Although the Court's opinion in *Mauro* broadly speaks of problems that prisoners face immediately upon the filing of a detainer generally, any harm flowing to Grant as a consequence of the specific detainer filed in case number F–10939–91—including what appears to have been use of the wrong detainer form and the consequent obscuration of his rights under the IAD—is not properly before the court in the present appeal of case number F–8984–91, which was not prosecuted by aid of the detainer.

### IV.

While the harm that Grant may have sustained in case number F–10939–91 is not an issue properly within the scope of this appeal, the government's use of the incorrect detainer form is certainly a matter of the instant record. It is unclear whether the United States Attorney's office routinely uses the form employed here—namely, Form USM–16 (Rev. 8/23/77) that addresses only rights under the Speedy Trial Act—for all detainers regardless of the notice provisions potentially triggered under other applicable laws, *e.g.,* the Interstate Agreement on Detainers presently at issue. *See United States v. Bailey,* 495 A.2d 756, 758 n. 3 (D.C.1985) (noting that the prison officials mistakenly provided Bailey with Speedy Trial Act forms instead of forms related to the IAD). However, having twice observed this irregularity in the administration of the IAD, we believe it is important to emphasize the responsibility of the Superior Court of the District of Columbia, the United States Attorney, as the primary prosecuting authority in the District of Columbia, and the Attorney General for the District of Columbia to afford inmate defendants proper notice of the IAD's protections. In particular, the United States Attorney's use of federal Form USM–16 alone, without supplementary disclosures actually relevant to the charges pending in the District of Columbia and the applicability of the IAD, is patently insufficient to provide accurate information to the officials of the other jurisdiction's penal institution who are charged by the IAD with the obligation to "promptly inform [the prisoner] of the source and contents of any detainer lodged against him and ... of [the] right to make a request for final disposition...." [12] D.C.Code § 24–701 art.

---

12. The detainer lodged by the Marshal's Service inaccurately stated that Grant was want- ed on a *federal* warrant for his failure to appear in the District of Columbia.

III(c). Furthermore, the Superior Court, as the court with jurisdiction to hear the underlying charges, must approve the prosecutor's custody request to the state where the inmate is housed. *See* D.C.Code § 24–701 art. IV(a) ("the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the [prosecutor's written] request [for temporary custody]."). These statutory mandates are critical in this jurisdiction because all persons criminally convicted in the Superior Court of the District of Columbia are committed to the custody of the Attorney General of the United States, who "may designate any available, suitable, and appropriate institutions [for housing inmates], whether maintained by the District of Columbia government, the federal government, or otherwise, or *whether within or without the District of Columbia.*" D.C.Code § 24–425 (1996) (emphasis added), *re-codified* at D.C.Code § 24–201.26 (2001). Because the District of Columbia does not currently have a prison, all persons convicted in our courts who are sentenced to imprisonment are incarcerated in penal institutions elsewhere. We trust that, consistent with these obligations, judges of the Superior Court will monitor requests for temporary custody to ensure that they and the detainers upon which they rely comply with the requirements and purpose of the IAD to provide inmate defendants with adequate notice of their statutory protections with respect to charges arising in this jurisdiction. The judgment of conviction is

*Affirmed.*[13]

---

13. Because we conclude that the IAD does not apply to the trial of the charge at issue in this appeal, we need not consider the parties' alternative arguments with respect to waiver.